REED PECK, Administrator, etc., Appellant, *v.* TRUMAN D. COLLINS, Respondent.

A final decision in interference proceedings, instituted under and in pursuance of the patent laws of the United States (U. S. R. S. §§ 4904, *et seq.*), so long as it remains unreversed and unaffected by any proceedings authorized to be instituted in equity (§ 4915), is final and obligatory upon the parties.

Defendant contracted with P. to purchase certain interests in a patent right, patented by M., and paid the agreed consideration; subsequently

defendant executed a contract which recited that the contract of purchase was given after "the letters patent had been surrendered up for a re-issue, and in ignorance of the fact that under certain circumstances the letters patent would not be returned to the owner;" and that P. desired a release from his obligations, in case he should not be able to fulfill; and in consideration of a return of the purchase-money paid, defendant agreed that P. should be released, and that he would repay the purchase-money when P. should notify him of his readiness to fulfill by deeding the interests contracted for "in said patent or any re-issue which may be granted." Defendant also had contracted with P. and others to purchase certain other interests in the same patent, and had paid a portion of the consideration, upon return of which he executed an agreement to return it to the vendors as soon as M. succeeded in getting a re-issue of the patent, or "provided the old patent is returned." At the time of the execution of these contracts interference proceedings had been instituted between M. and others, the final decision in which was against M., and covered the whole invention claimed by him. In an action upon said contracts it appeared that subsequent to such decision the attorney of M. had in his possession the original letters patent granted to M. *Held*, that it was manifest that the last two contracts were made in consequence of the interference proceedings; that the contracts required readiness and ability to fulfill on the part of the vendors, and by the decision in the interference proceedings, they were rendered unable to fulfill, as much so as if M. never had a patent; that the words "provided the old patent is returned" in the last contract did not contemplate a return after the patent had been declared void, but the return of a patent valid as such; and that plaintiff was not entitled to recover.

[ (Argued May 23, 1877; decided September 18, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, affirming a judgment in favor of defendant entered upon an order nonsuiting plaintiff on trial, and affirming an order denying a motion for a new trial.

This action is brought upon two contracts executed by defendant, the one dated June 11th, the other July 6th, 1868. The nature of the contracts and the facts appear sufficiently in the opinion.

*A. D. Wales*, for the appellant. Defendant by the two original contracts of April 24 and April 28, 1866, purchased an interest in the patent as it then was, after application for

re-issue had been made absolutely and unconditionally. (*Gay* v. *Cornell*, 1 Blatch., 506; *Custer* v. *Brush*, 25 Wend., 628; *Stevens* v. *Head*, 8 Verm., 174; *Causler* v. *Eaton*, 2 Jones Eq., 499.) The legal presumption is that the patent had been returned uncanceled. (Whitman's Patent Laws, 580, § 175; *Phila. etc. R. R. Co.* v. *Simpson*, 14 Pet., 448; *Allen* v. *Blunt*, 2 W. & M., 122; *Wilson* v. *McCormick*, 2 Blatch., 31; *Orr* v. *Badger*, 7 L. R., 467; *Forbes* v. *Barstowe Stove Co.*, 2 Cliff., 380; 1 Greenl. on E. [Redf. Ed.], 45; 1 Greenl. on Ev. [4th Ed.], 46, § 41; 9 Conn., 110; 21 Wend., 178; 4 Den., 183; 9 Barb., 271; 22 id:, 516; 2 Robt., 284; *Cahill* v. *Palmer*, 45 N. Y., 478.) The original patent of Mudge is still in existence as a legal and subsisting right. (Whitman's Patent Laws, 580, §§ 375, 582; *Whitley ex parte Coms.* Dec., 72; *French* v. *Rogers*, 1 Fish., 133; *Woodworth* v. *Hall*, 1 W. & M., 261; *Woodworth* v. *Edwards*, 3 id., 127; *Grant* v. *Raymond*, 6 Pet., 242; *Wilson* v. *Barnum*, 1 Wal. Jr., 340; Curtis on Patents [id., 1849], 532; id. [ed., 1873], 661, 662; *Seymour* v. *Osborne*, 3 Story 755; *O'Reily* v. *Morse*, 15 How., 112; *Wilson* v. *Roseau*, 4 id., 688; *Woodworth* v. *Stone*, 3 Story, 751; *Moffot* v. *Garr*, 1 Black., 273; *Hogg* v. *Emerson*, 11 How., 606; 6 id., 483; *Pitts* v. *Whitman*, 2 Story, 621.) Plaintiffs not being parties to the application for a re-issue were not bound by it. (*Potter* v. *Holland*, 1 Fish., 327; *Woodworth* v. *Stone*, 3 Story, 750; *Smith* v. *Mercer*, 4 West. L. J., 52; *McBurney* v. *Goodyear*, 11 Cush., 571; Whitman's Patent Laws, 557, 558.)

*M. M. Waters*, for the respondent. The patent of Mudge was extinguished by the surrender of February 3, 1866. (*Moffat* v. *Garr*, 1 Black., 273; *Reedy* v. *Scott*, 23 Wal., 364; *Meyer* v. *Pritchard*, 15 Alb. L. J., 125.) If the contracts be construed as a promise by defendant to pay for an invalid or extinguished patent, the promise is void. 2 Bosw., 387; 13 N. H., 317; 2 W. & S., 270; 4 Hun, 146; *Marston* v. *Sweet*, 2 N. Y. W'kly Dig., 450; 13 Wend., 385; 19 id.,

411; 57 Barb., 84, 114; 14 Pick., 220; 6 N. H., 480; 8 id., 317; 3 W. & S., 270; 11 Ohio, 471; 7 Blackf., 138; 8 Ind., 82; *White* v. *Coatsworth*, 2 Seld., 136; *LeGuen* v. *Gouverneur*, 1 J. Cas., 436; *Embury* v. *Conner*, 3 N. Y., 511, 522; *Haire* v. *Baker*, 5 id., 357; *Davis* v. *Talcott*, 12 id., 184; *Hawkins* v. *Swett*, 4 Hun, 146; *Marston* v. *Swett*, id., 153.)

Church, Ch. J. By two contracts bearing date, respectively, April 24th and April 28th, 1866, the defendant agreed to purchase certain interests in a patent right for sinking wells patented by one Mudge. By the first contract, one-fourth of the unsold territory and proceeds of territory sold were agreed to be purchased, and by the last an additional interest of three-thirty-second parts. The vendors in the first contract were the plaintiff's intestate, Preston, Peck and Mudge, and in the last the plaintiff's intestate, and the vendors agreed to convey the interests sold by deed upon demand. Upon the first contract, $2,000, part of the consideration, was paid in 7.30 bonds, and the defendant gave his note for $1,500, the whole consideration in the last contract.

The action is brought upon two contracts subsequently made, bearing date, respectively, June 11th and July 6th, 1866. The first was between the defendant and the plaintiff's intestate, and after reciting the making of the contract of the 28th of April, above referred to, contained this recital: "And whereas said contract was given after the letters patent had been surrendered up for a reissue, and in ignorance of the fact that, under certain circumstances, the letters patent would not be returned to the owner of said patent; and whereas the said Peck desires a release from his obligations under said contract, in case he shall not be enabled to fulfill such obligations." It was then agreed, in consideration of the return of the $1,500 to the defendant, that Peck should be released from his obligations, and the defendant agreed to pay certain expenses attending the application for a re-issue, and to pay to Peck $1,500 "when the said Peck

shall notify him of his readiness to fulfill the said contract by deeding to said Collins his interest in said patent, or any reissue which may be granted under said application." The other contract was in the form of a receipt signed by the defendant; and, after acknowledging the receipt of $2,000 in 7-30 bonds, it was agreed that the bonds should be returned to the Pecks "as soon as Byron Mudge succeeds in getting a re-issue of a patent for putting down wells, now in the patent office, or providing the old patent is returned."

There was a controversy in respect to priority of invention between Mudge and one Suggett, who had obtained two patents, one prior and one subsequent to Mudge, and one Green, who was applying for a patent, and after the application of Mudge for a re-issue, interference proceedings were instituted under the patent laws at the instance of Mudge against Suggett, and by Green against both Mudge and Suggett. These proceedings are authorized by § 4904, U. S. R. S., which provides that, "whenever an application is made for a patent (and an application for a re-issue is the same thing), which, in the opinion of the commissioner, would interfere with any pending application, or with any unexpired patent, he shall give notice thereof to the applicant or patentee, as the case may be, and shall direct the primary examiner to proceed to determine the question of priority of invention. And the commissioner may issue a patent to the party who is adjudged the prior inventor," unless an appeal is taken as provided by the act. Three successive appeals are allowed by statute in these proceedings—one from the decision of the primary examiner to the chief examiners, from their decision to the commissioner, and from his decision to the Supreme Court of the District of Columbia. (§§ 4909, 4910, 4911.) All the parties interested, Mudge, Suggett and Green, appeared and litigated the question fully before the primary examiner, and upon appeal before each of the appellate tribunals. Of the four tribunals, three decided against Mudge. The examiners in chief decided in his favor. Their decision was reversed by the commissioner,

and his decision was affirmed by the Supreme Court. By
the final decision Green was awarded a patent, and whether
his patent superceded Suggett's patents the papers do not
clearly show; but it was decided that Suggett had a superior
right to Mudge, and if Green had the superior right to Sug-
gett, it removed Mudge so much farther from success. These
decisions covered the whole invention claimed by Mudge,
and the effect of them was to render his letters patent invalid
and utterly worthless, except that he still had, by statute, the
right to contest the matter by bill in equity. (§ 4915.)    So
long as the final decision remained unreversed and unaffected
by any proceedings authorized to be instituted in equity, it
was final and obligatory upon the parties; and, for the pur-
poses of this case the decision must be deemed *res adjudicata*
between the parties.    It should be stated that evidence was
given tending to show that subsequent to the final decision
the attorney of Mudge had in his possession the original let-
ters patent granted to Mudge, from which it is claimed that
the letters were returned within the meaning of the contract,
and that the defendant was liable.

These contracts were drawn by the parties themselves.
They are inartificial, and some of the expressions are ambigu-
ous.    They must be construed according to established rules,
with a view, if practicable, of carrying out the intent of the
parties.    The language must be given its ordinary practical
construction, viewed in the light of surrounding circum-
stances.

It is quite manifest that the last contracts were made in
consequence of the litigation involved by the interference
proceedings, and in contemplation of a possible adverse
result.    These proceedings are not mentioned, but they had
been instituted, and the first contract recites that the patent
might not be returned, of which fact the defendant was igno-
rant.    It would seem that the contract was made for the
benefit of Peck, as the recital states, that he desired to be
released from his obligation to convey, in case he was not
able to fulfill such obligation.    He knew, at this time, that the

question was pending before a tribunal competent to decide it between Mudge, under whom he claimed, and two other persons, as to which of them was entitled to priority of invention, and consequently to a patent, and we must presume that he contemplated the contingency of an adverse result in speaking of his desire to be released from his obligations, if he was unable to fulfill them. He would be unable to fulfill them, if the decision was adverse; as much so as if Mudge never had a patent. He had agreed to sell and convey an interest in a patent right in certain territory, and if the patent was invalidated he could not convey it. The agreement is to pay $1,500 when Peck notifies the defendant of his readiness to fulfill the contract by deeding to defendant his interest in the patent, and any re-issue which may be granted. The difficulty with the plaintiff's case upon this contract is, that his intestate never has been ready to fulfill his contract; that is, to convey to the defendant three-thirty-second parts of Mudge's patent right. Notice of readiness requires readiness, and the latter implies ability to fulfill. As the matter stood, when he sought to convey, Mudge had no patent right, and Peck had no interest that he could convey. The condition of payment was that Peck could convey the specified interest, and was willing to do it. Any other construction would not only be unreasonable and unjust, but would nullify the very terms of the instrument, and clearly its intent. It is evident, also, that Peck at that time had no expectation of payment by the defendant, unless he could convey to the defendant an interest in a valid patent right, and it is evident, also, that he deemed it important to be relieved from his contract to convey an interest, if the decision should be adverse to Mudge's patent.

The contract contained in the receipt of July 6th contains different language, but the condition of payment in both contracts were doubtless intended to be the same. The contention of the plaintiff is based upon a technical construction of the words of the alternative, " or providing the old patent is returned."

This language is ambiguous, and it is not so clear what the parties did as what they did not intend by it. Taken literally, it implies that there might be a return of the patent without a re-issue, and such a contingency was possible by a withdrawal of the application for a re-issue, and, perhaps, also by a decision that no re-issue was necessary, and that the old specifications were sufficient, and possibly by a simple denial of the application for a re-issue for any reason not affecting the validity of the original patent. Without undertaking to say precisely what was in the minds of the parties in using these words, it is manifest that the plaintiff's construction cannot be sustained. It would be unreasonable to suppose that the subsequent return of the old letters after the patent had been declared void was intended. The parties were dealing with matters of substance, and not shadows, or waste paper, and when they provided for a return of the old patent they meant a patent valid as such. Otherwise, why the necessity of these contracts at all ? If the defendant was to pay, although the patent was declared void and valueless, why should Peck desire to be released from his obligations, and why should the consideration paid be returned to the defendant ? The mere possession of the letters, after the patent had been declared void, was not the return contemplated. There is no evidence how the agent became possessed of the old letters. It does not appear that they were *returned* by the department at all. They may have been loaned or possibly returned upon request, to enable the plaintiff to bring his bill in equity. However this may be, the return of these old letters for any purpose, after the adverse adjudication, was not the return specified in the contract or contemplated by the parties.

The question was much discussed by counsel, whether the surrender of a patent for the purpose of a re-issue was a cancellation of the patent from the time of surrender, or only from the time of re-issue. In my view of this case, I do not deem the point material. In the first place, an application for re-issue can only be made upon the ground that the

patent is invalid and inoperative (§ 4916), and the petition of Mudge for a re-issue, states that his original patent was invalid and inoperative for want of a sufficient specification. It is conceded, and the act of 1870 expressly declares, that cancellation takes place upon re-issue. There was no re-issue, but the adjudication which intervened was as fatal to the original patent as a re-issue. The latter would have been a valid patent from that time, while the former destroyed the old, and all right to a new patent. It is not important for this case where the fatal blow came from ; it is sufficient that it was effectual. It was suggested, upon the argument, that there was sufficient vitality in the letters patent to base a bill in equity upon, and that a return for that purpose might have been contemplated by the parties. The answer to this is, that the defendant purchased and agreed to pay for an interest in a patent right, and not in a right to bring a law suit. It was this latter right only which remained after the adjudication, and there is not a word in the contracts, or a circumstance in the case, tending to show that a return for this purpose was what the defendant contracted for. The whole case shows that the return of the letters patent contemplated was such a return as would enable the vendors to fulfill their obligations under the original contracts, and that this could only happen by the return of a valid patent ; this is substantially expressed in one of the last contracts, and is fairly implied in both.

The judgment must be affirmed.

All concur.

Judgment affirmed.