WILLIAM E. MARSTON, Respondent, *v.* GEORGE W. SWETT et al., Appellants.

*It seems* that where a patent is apparently valid and in force a party using it is liable for royalties agreed to be paid until the patent is rescinded or revoked, or until notice has been given to the opposite party that he will pay no more under the contract. Actual invalidity of the patent is alone no defense to an action to recover such royalties.

But if the patent is annulled by proper legal proceedings and priority of invention and a patent is awarded to another, no royalty is thereafter recoverable ; and in such case no notice is necessary.

Plaintiff and defendants, S. and M., were joint-owners of certain letters patent which they believed to be valid; an agreement was entered into between the parties to the effect that defendants should have the exclu-sive right to manufacture and sell the patented article in consideration of certain royalties which they agreed to pay plaintiff. In an action to recover royalties accruing under the contract from October 1, 1869, to January 1, 1872, defendants offered to prove that on December 8, 1869, the patent office declared an interference between the patentee and one G. respecting the invention, and that on January 19, 1871, a decision was made by that office declaring G. to be the first and original inventor, awarding priority to him, and directing the issue of a patent to him. This evidence was objected to and excluded. *Held,* error; and that had the facts so offered to be proved been established, plaintiff would not have been entitled to recover royalties accruing after the date of such decision.

*Marston* v. *Swett* (66 N. Y. 206), distinguished.

(Argued October 4, 1880; decided November 16, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, affirming a judgment in favor of plaintiff entered upon a verdict.

This action was brought to recover the amount of certain royalties which the complaint alleged defendants had agreed to pay for an exclusive right to use a certain invention known as "Hawk's auxiliary air-chamber for stoves, heaters and fur-naces," for which letters patent had been issued to Elizabeth Hawks, and which had been assigned by her to the plaintiff, the defendants, Swett and Quimby, and to one Nuttall.

The substance of the alleged agreement and the material facts are set forth in the opinion.

*Esek Cowen* for appellants. The promise of defendants to pay royalties, as sworn to by the plaintiff and his witness Nut-tall, was void for want of consideration. (*Perkins* v. *Proud,* 62 Barb. 427; *Snyder* v. *Liebengood,* 4 Penn. 405; *Shupe* v. *Galbraith,* 32 id. 10.) An agreement not to do a certain thing for a number of years is just as much within the statute as an affirmative agreement. (*Doyle* v. *Dixon,* 97 Mass. 108.) Neither part performance, nor complete execution on one side, will take the contract out of the statute. (*Lockwood* v.

*Barnes,* 3 Hill, 128; *Bartlett* v. *Wheeler,* 44 Barb. 162.) The agreement to pay royalties was also void, as it was an agreement for seventeen years and was by parol; the agreement to pay money is within the statute. (*Tracy* v. *Sterling,* 99 Mass. 461; *Durand* v. *Curtis,* 57 N. Y. 7.) A transfer of an "exclusive right" is a grant of the whole or a portion of the monopoly secured by the patent; to be valid it must be in writing, and to be good as against subsequent purchasers in good faith must be recorded. (*Gibson* v. *Cook,* 2 Blatchf. 148.) The only ground upon which royalties paid upon a patent, afterward surrendered, can be retained by the patentee, is that of voluntary payment. (*Moffat* v. *Garr,* 1 Black, 273.) Defendants had a right to prove that the patent was invalid. (*Peck* v. *Collins,* 70 N. Y. 376; 66 id. 206; 1 Pars. on Cont. [5th ed.] 462.)

*James Lansing* for respondent. Assuming the contract indefinite as to time, it was valid. (*Chaunter* v. *Dewhurst,* 12 M. & W. 823; *White* v. *Baxter,* 71 N. Y. 260.) In such a case a promise of forbearance generally is a good consideration, and may, when so far executed as to confer a benefit to one or damage to the other, be enforced. (1 Story on Cont., § 435; *Elting* v. *Vanderlyn,* 4 Johns. 237; *King* v. *Upton,* 4 Greenl. 552.) Mere indefiniteness of time for which a contract has to run or an act to be done does not render it invalid, so far as executed. Where each party has got all he bargains for, neither can complain. (*Moore* v. *Fox,* 10 Johns. 244; *McLees* v. *Hale,* 10 Wend. 426; *Marston* v. *Swett,* 66 N. Y. 206; *Jonas* v. *Burnham,* 67 Me. 93.) If it shall be assumed that the contract was for the life of the patent or for an indefinite period, it is not within the statute of frauds. (*McLees* v. *Hale, supra; Moore* v. *Fox, supra; Lyons* v. *King,* 11 Metc. 411; *Worthy* v. *Jones,* 11 Gray, 168.) The statute does not apply to executed agreements. (*Dodge* v. *Crandall,* 30 N. Y. 294; *Tallmadge* v. *Sar. R. R. Co.,* 13 Barb. 493; *Donnellan* v. *Read,* 3 Barn. & Adol. 899; *Thomas* v. *Nelson,* 69 N. Y. 118.) The contract was one which either of the partners had

a right to make for the firm. (1 Collier on Part., § 497; 2 Wharton's L. & E., § 415; *Sundiland* v. *Marsh*, 2 Barn. & Adol. 673.) The bare acceptance, by defendants, of the stipulation or offer, did not, *per se*, imply any promise, upon their part, to accept an exclusive license, if tendered, nor to pay any consideration for its use. (*Justice* v. *Lang et al.*, 52 N. Y. 323.) Where parties to a verbal agreement have agreed to put it in writing, it is competent for either of them to waive the writing by recognizing his liability upon the unwritten contract. (*Slover* v. *Flack*, 30 N. Y. 64.) Defendants' offer to prove that the patent was invalid was properly excluded. (*Perry* v. *Starrett*, 14 O. G. 590; U. S. R. S., § 4918; *Codd* v. *Rathbone*, 19 N. Y. 37; *Williams* v. *M. & T. Fire Ins. Co.*, 54 id. 581.)

FINCH, J. The existence of a valid patent, protecting the device manufactured by the defendants, was the essential and material element underlying the contract between the parties. Assuming, as we must, from the finding of the jury, that the contract was what the plaintiff claimed, it is still apparent that the existence and validity of the patent was the basis of the agreement, and its principal if not its sole inducement. The patent itself, with a guaranty of its validity, was transferred by Mrs. Hawks, the original patentee, to the four parties, Marston, Nuttall, Perry and Swett, burdened with a condition for the payment of royalties by the four assignees to the assignor, but with the express covenant contained in the instrument of transfer that the patentee should guarantee the validity and priority of the patent and protect the purchasers in the exclusive enjoyment of the rights and privileges conferred thereby; in default whereof all payments of royalty were to cease. The relations of the four tenants in common of the patent to the original patentee being thus provided for, the thing that remained was an arrangement among themselves. That arrangement, as described by the plaintiff, was that the defendants Swett and Perry, with their partner Quimby, should manufacture and use the

patented device, which by virtue of their interest as tenants in common they had the right to do (*Clum* v. *Brewer*, 2 Curtis, 524), and that Marston and Nuttall, who had the same right, should surrender it to the defendants, and neither manufacture themselves nor license others to manufacture; in consideration whereof the royalties sued for were to be paid by the defendants. This agreement was evidently made with reference to the existing fact of a supposed valid patent, without which it would not have been made at all. The contract of Marston and Nuttall not to manufacture themselves and not to license others to manufacture, taken in connection with the patent supposed to be valid, disabled from interference the only parties who could prevent the monopoly, and it was that monopoly, such exclusive right of use, for which the defendants contracted and agreed to pay. This construction of the contract was expressly decided when the case was first before us. (66 N. Y. 211.) Judge EARL says: "The defendants desired the exclusive right to use the invention, and *hence* made this agreement with plaintiff."

The complaint alleges that from the making of the agreement to the first of October, 1869, the stipulated royalties were paid in full, but that from that date to the first of January, 1872, the accruing royalties were not paid, and were sought to be recovered. On the first, as well as the second trial, the defendants put in evidence a decree of the United States Circuit Court for the northern district of New York, declaring the said letters patent "void, invalid, and of no effect." By that decree both parties before us were bound because parties to the litigation. That decree, however, was rendered on the 21st of January, 1873, and about a year later than the extent of plaintiff's claim for royalties. On that state of facts we held that the invalidity of the patent thus declared when the demand for royalties had ceased was not a defense as against those which accrued while the patent was apparently valid and in force. The reasoning of Judge EARL on this point is very clear and forcible. He says that the defendants under the agreement "actually enjoyed the exclusive right which they

sought;" that "during the time mentioned in the complaint they enjoyed all they could have had if the patent had been valid;" that they "held a patent which was respected as valid by everybody, and enjoyed a monopoly of the invention;" that "they could manufacture the patented article without competition, and the possession of the patent, apparently valid, enabled them to license others for a consideration." From this reasoning flowed the inevitable conclusion that there was not a failure of consideration.

But on the second trial the situation changed, and a new element was sought to be introduced. The defendants offered to prove that on December 8th, 1869, the Patent Office declared an interference between Mrs. Hawks and one John H. Goodfellow, respecting the invention which is described in the patent in question, and that on the 19th of January, 1871, the Patent Office made a decision declaring that Goodfellow was the first and original inventor of the patented improvement and awarding priority to him, and directing the issue of a patent accordingly.

Two things are to be observed respecting the fact thus sought to be proved. First, that the decision upon the interference annulled the Hawks patent and rendered it void (*Peck* v. *Collins*, 70 N. Y. 376), and second, that it so became void and utterly worthless on the 19th of January, 1871, which was during the period covered by plaintiff's recovery of royalties. So that, the offered evidence having been rejected, the plaintiff was permitted to recover royalties for the period from January 19th, 1871, to January 1st, 1872, almost an entire year, during the whole of which the patent was invalid and worthless, and so declared by a public and official decree.

The evidence thus offered was rejected under the plaintiff's exception, and that ruling presents the most important question in the case.

Its correctness is defended, first, upon the ground that the evidence was only offered as bearing upon the probability of notice having been given by the defendants of their intention to discontinue the payment of royalties, and it is said that as

the notice they claimed to have given was, if at all, in July, 1870, and, therefore, six months before the decision of the interference, that decision could not possibly bear upon the probability of the previous notice.

But we are not prepared to assent to the attempted limitation of defendants' offer. When first made it was general, and without limitation. The court replied to the offer by an explanation which amounted to a rejection of the proposed evidence; saying in substance that the judgment of the Circuit Court having declared the patent invalid, proof of notice in fact given would be an answer to the royalty. Treating his general offer as having been rejected, the defendants' counsel then offered it as bearing on the question of the probability of notice. The court rejected it for that purpose as too remote. The counsel then repeated his offer generally, and without qualification. It was excluded, and he took an exception. The question, therefore, fairly confronts us, whether this evidence was admissible?

It will be readily observed that the rejected evidence tended to disprove every one of the facts upon which in our former decision we rested our conclusion that the agreement to pay royalties was supported by an adequate consideration, so far, at least, as the period from January 19th, 1871, to January 1st, 1872, was concerned. We said the defendants actually enjoyed the exclusive right which they sought; but the evidence offered would have shown that the exclusive right had ceased to exist, and could no longer be enjoyed. We said they held a patent which was respected as valid by everybody; but the rejected evidence would have shown their patent worthless and respected by nobody. We said they enjoyed a monopoly of the invention. The evidence would have shown that, so far from having a monopoly, they had lost the right to manufacture at all. We said they could manufacture without competition, and possessing a patent apparently valid, could license others. The evidence would have shown a patent annulled and destroyed; the competition of the prior patentee and his licensees, and the impossibility of licensing a single manufacturer. We said they

got what they bargained for; the evidence would have shown they lost it all. There is no denying, therefore, that the evidence offered would have taken the case, for the period indicated, out of the range of our ruling upon the facts as first presented. Evidence which would do that could hardly be immaterial. Recurring to our original view of this contract, taken also upon the previous appeal, that the substantial consideration to uphold these royalties was the transfer to defendants of a monopoly, the right to an exclusive use, we see at once that the evidence offered tended to show the total failure of that consideration for the year 1871.

It is, however, further argued before us that the evidence rejected was immaterial because it was not offered to be proven that there was any interference with the defendants' exclusive use of the monopoly or that any patent was issued to Goodfellow. That suggestion does not remove the difficulty. The decision awarding priority and a patent to Goodfellow itself destroyed defendants' exclusive use; destroyed their use at all except at the peril of an infringement. The patent to Goodfellow was ordered to be issued, according to the evidence offered. We cannot presume it was not.

It is impossible not to see that if plaintiff's theory should prevail these defendants might be liable at one and the same time during the year 1871 to pay royalties to the plaintiff, who had no patent, and to Goodfellow, who had. The injustice of such a result makes us slow to believe that any rule of law requires us to sustain it.

We think the true rule to be deduced from the authorities is this: Where the patent is apparently valid and in force the party using it, receiving the benefit of its supposed validity, is liable for royalties agreed to be paid and cannot set up as a defense the actual invalidity of the patent. The reasons for the rule are that the party has got what he bargained for; that he cannot be allowed at the same time to affirm and disaffirm the patent; and that he cannot in this way force the patentee into a defense of his right and compel him to try it in a collateral action. While the manufacture goes on under

such an apparently valid· patent it is presumed to be under and in accordance with the agreement to pay royalties. If the manufacturer does not so intend, and chooses to make the patented article, not under the patent but in hostility to it, he must give notice of that intention, in order that the presumption may not attach or the patentee be misled. But if the patent is annulled or destroyed by due and effective legal proceedings and priority of invention and a patent is awarded to another, no notice is necessary for there is no presumption or inference of manufacture under a patent judicially avoided and annulled. It ceases to exist. The manufacture is either absolutely free, or an infringement upon the rights of the prior inventor, or in submission to his claims. The English cases cited in 66 N. Y. in this case by Judge EARL are all in harmony with this view. They steadily resisted all attempts of licensees under patents apparently valid to raise the question of their validity. (*Taylor* v. *Hare*, 1 N. Rep. 260; *Lawes* v. *Purser*, 88 Eng. C. L. R. 929; *Noton* v. *Brooks*, 7 Hurlst. & N. 499; *Baird* v. *Neilson*, 8 Cl. & Fin. 726; *Crossley* v. *Dixon*, 10 H. of L. Cases, 293; *Lawes* v. *Purser*, 38 Law & Eq. 48.) In the case last cited, ERLE, J., states the rule thus: "If the plaintiff believed the patent to be valid, and the defendants believed so, too, it seems to me that the defendants must pay for the privilege until they can show that the patent has been rescinded or revoked, or that notice has been given to the plaintiff that the defendant will not pay any more under the contract." That is a compact. statement of the law and meets our approval.

The evidence, therefore, of the interference, and the decision thereon, which, as we held in *Peck* v. *Collins*, destroyed the patent, and rendered it worthless, was clearly admissible and very material to the defense. It tended to furnish an answer to the claim of royalties for the year 1871, and to do away with the necessity of the notice which was one of the questions of fact on the trial. We do not decide that the decision of the Patent Office is a conclusive defense to the royalties of 1871. Its effect may be modified and shaped by other facts which we

cannot foresee and of which we can only judge when they properly come before us. We decide now that the evidence of the interference and the decision thereon was admissible and material, and improperly rejected.

For this error the judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.