SKINNER *v.* WALTER A. WOOD MOWING & REAPING MACH. CO.

*(Supreme Court, General Term, Third Department.*  September 14, 1892.)

1. CONTRACTS—WHEN APPORTIONABLE—ROYALTY ON PATENT.
  By an oral contract, in 1872, defendant, a corporation, acquired the exclusive right to use plaintiff's invention on the mowers and reapers manufactured by him, and was to pay plaintiff the reasonable value of such use.  No time was fixed for the contract to expire, or for payment of any royalty under the same.  *Held,* that the contract was apportionable, and a recovery by plaintiff in 1884 of the royalty due at that time did not exhaust plaintiff's right to recover, in a subsequent action, the royalty accruing since 1884 to the expiration of the patent.

2. ACTION FOR ROYALTY—ESTOPPEL TO DENY VALIDITY OF PATENT.
  A recovery is not barred by the alleged invalidity of the patent, where it appears that defendant asserted such invalidity prior to the first action, but did not plead it as a defense in that action.

Appeal from judgment on report of referee.

Action by Smith A. Skinner against the Walter A. Wood Mowing & Reaping Machine Company to recover royalty for the use of plaintiff's invention. From a judgment for plaintiff, defendant appeals.  Affirmed.

The opinion of the Honorable CHARLES R. INGALLS, referee, was as follows:

"The general merits of this controversy between the parties have been substantially determined in a former action between the parties, which was tried before a referee, and resulted in a judgment in favor of the plaintiff, which, upon appeal, has been affirmed by the general term (47 Hun, 637) and the court of appeals, (24 N. E. Rep. 1102.)  The questions litigated and submitted for determination in this action are two, and may be briefly stated as follows:  *First.*  Whether the judgment obtained by the plaintiff in the former action for the use of the oiler to the 1st of September, 1884, constitutes a bar to a recovery by the plaintiff in this action upon the ground that the contract between the parties by which the defendant secured the right to use the oiler under the plaintiff's patent should be regarded an entire and indivisible contract, in such sense that the plaintiff could legally claim no compensation for such use by the defendant until the termination of the patent,— a period of seventeen years,—and that in no event could the plaintiff have but one recovery for such use of the patent, and, having obtained that in the former action, that the judgment therein is a bar to this action.  *Second.*  Whether the refusal to pay royalties by the defendant upon the ground that the plaintiff's patent was claimed to be invalid, and the notice of such refusal, which was given to the plaintiff in October, 1880, and June, 1882, should have the effect to prevent a recovery by the plaintiff in this action.  These are substantially questions of law, and their decision involves no little difficulty.  With the hardships of the transaction between the parties I have nothing to do.  The contract was by parol, and was found by the referee in the former action to be as follows:  '(3) That soon after the issue of such letters patent the plaintiff and defendant entered into an agreement whereby it was agreed on the part of the plaintiff that the defendant should have the exclusive right of using the plaintiff's oiler on mowing and reaping machines, and should have the right, but not exclusive, to use it on other machines; and on the part of defendant that it would use said oiler upon its mowing and reaping machines, and would pay the plaintiff therefor the reasonable value of of such use.'  It is not claimed by either party that the evidence in this action changes the terms of such contract as found by the referee in the former action.  The inquiry, then, is practically whether the recovery in the former action exhausted the plaintiff's right to compensation for the use of the oiler

by the defendant under the said contract, and the answer thereto must depend upon the construction which should be given to such contract, with the view to determine whether the same is to be regarded entire, in the sense that the plaintiff's right to compensation depended upon full performance of the contract, or whether it should be regarded at least so far severable and apportionable as to allow the plaintiff compensation for such use within reasonable limits during the continuance of the contract. The contract is peculiar to such extent that during a pretty extended research I have not discovered a case containing a contract which can be said to match it in all of its features. Interpreting the contract, one important element must not be lost sight of, which is to ascertain as far as possible the intention of the parties in regard to the making and performance of the same, and that must be gathered from the terms of the contract, the nature of the transaction, and the circumstances surrounding it. In 2 Pars. Cont. p. 30, under the head, 'Entirety of Contracts,' the author says: 'No precise rule can be given by which this question, in a given case, may be settled. Like most other questions of construction, it depends upon the intention of the parties, and this must be discovered in each case by considering the language employed, and the subject-matter of the contract.' In 1 Story, Cont. § 24d, treating this subject, the author says: 'This rule would found the interpretation of the contract on the intention of the parties as manifested by their acts and by the circumstances of the case.' In *Tipton* v. *Feitner*, 20 N. Y. 423, at page 432, Judge SELDEN remarks: 'Parties must be held strictly to their contracts, and when they have agreed in terms or by plain implication to a condition which is to bar them of a recovery according to what is equitable and just, they must abide by the consequences. But courts are to see that such was the intention of the parties, before they are held up to so rigid a rule.' In *Pordage* v. *Cole*, 1 Saund. 320, note 4 to that case contains the following: 'It is justly observed that covenants, etc., are to be construed to be dependent or independent of each other, according to the intention and meaning of the parties and the good sense of the case, and technical words should give way to such intention.' *McKnight* v. *Dunlop*, 4 Barb. 46. In that case Judge PAIGE, in an opinion at general term, remarks: 'Covenants are to be construed to be dependent or independent, according to the intention and meaning of the parties and the good sense of the case.' *Pordage* v. *Cole*, 1 Saund. 320, note 4; *McBride* v. *Hagan*, 1 Wend. 326. 'Their precedency,' said Lord MANSFIELD, 'must depend on the order of time in which the intent of the transaction requires their performance.' In *Pierson* v. *Crooks*, 115 N. Y. 555, 22 N. E. Rep. 349, Judge ANDREWS remarks: 'Whether the contract was entire in the sense claimed depends upon the intention.' In *Jones* v. *Barkley*, Doug. 685, Lord MANSFIELD says that the dependence or independence of covenants was to be collected from the evident sense and meaning of the parties, and that, however transposed they might be in the deed, their precedency must depend on the order of time in which the intent of the transaction requires their performance.

"Turning to the contract in question we discover: *First*. That the defendant was not absolutely bound to use the oiler for any fixed period, as the defendant was at liberty at any time to cease to manufacture mowing and reaping machines, whereupon the obligation to pay on the part of the defendant would cease, as there would be no machines to which the oiler could be attached under the contract. There is no provision of the agreement by which the defendant became obligated to continue such manufacture, and consequently the period of the use of the oiler was not rendered certain, but was subject to be terminated at any time by the abandonment of the manufacture of such machines. It may be regarded improbable that such an event will happen, yet it is by no means impossible, considering the length of time the patent was to continue,—seventeen years. *Second*. No specific price was

fixed by the contract which the plaintiff was to receive for the use of the oiler. That was left to be fixed by the agreement of the parties, or the verdict of a jury. The referee in the former action, upon the request of the defendant, made the following finding: '(8) That the defendant never agreed to pay the plaintiff any specific sum for the use of this oiler.' *Third.* No time of payment is fixed by the contract. *Fourth.* The defendant secured by the contract the exclusive enjoyment of the use of the oiler upon the mowing and reaping machines of the company, if manufactured during the existence of the patent,—seventeen years. If the contract is susceptible of a construction which would deprive the plaintiff of any compensation until the expiration of the patent, upon the ground that the contract is entire, and not severable, it is quite evident that the plaintiff made a very unusual and unreasonable agreement, and the remarks of Judge SELDEN, above quoted, would seem to apply thereto with force.

The evidence discloses that the question of compensation was agitated by the parties as early as 1880, as appears by a letter of the plaintiff, put in evidence by the defendant, which was addressed to Mr. J. Russell Parsons, the defendant's attorney in the business of the company; and also by the evidence of Mr. Parsons in this action, to the effect that he received from Mr. Wood, the president of the company, a written communication, requesting him to examine the books, and ascertain the number of machines to which the oiler had been attached, and to compute at five cents each, and ascertain the sum it would amount to; and that he made such examination and computation, and entered the same upon the paper sent to him by Mr. Wood, and returned the same by the same messenger to Mr. Wood. The plaintiff also testified upon the same subject, and narrates the interviews which he had with Mr. Wood in regard to his compensation. I do not perceive from the evidence that in any of the negotiations of the parties it was pretended that the plaintiff's right to any compensation was by the contract postponed until its termination, and it would seem that, if any such view had been entertained by either party, it would have found expression in some of their interviews. I therefore conclude that it could not have been the intention of the parties to postpone the compensation of the plaintiff until the termination of the period during which the defendant had secured the use of the patent. The contract did not contemplate, nor did it amount to, an absolute and entire sale of the patent, but a license to use it for the period and in the manner specified in the agreement; and the plaintiff reserved to himself the benefits to be derived therefrom, subject only to the rights conveyed to the defendant.

"Having reached the conclusion that it was not the intention of the parties to postpone, by the contract, any payment to the plaintiff for the use of the oiler until the termination of such use, as secured by the defendant by virtue of the contract, I am also convinced, by a careful consideration of the terms of the contract, the nature of the transaction, the acts and declarations of the parties, that the law applicable thereto does not call for an interpretation so palpably in conflict with the intention of the parties as to hold that the contract is to be regarded in such sense entire and indivisible as to deprive the plaintiff of compensation until the termination of such license to the defendant, or as to render the judgment recovered by the plaintiff in the former action a bar to a recovery in this action for the use of the oiler since 1st of September, 1884. In support of such conclusion I shall content myself with a reference to a few of the many authorities which I have examined, as anything like a discussion of those examined would be an almost endless undertaking. In Story on Contracts, under the head, 'Entire and Divisible Contracts,' (section 21,) the author says: 'The criterion of a divisible contract is that the extent of the consideration on either side is indeterminate until the contract is performed. * * * Thus, in the instances just stated, there is

no total quantity of work, and no exact bushels of corn, and no total price specified, but the price is to be adjusted so as to become an equivalent for the labor or the corn after the contract is performed.' This doctrine seems to apply with force and directness upon the contract under consideration, by the terms of which no definite number of machines is specified to which the oiler should be attached, nor is any price fixed for the use of the oiler, and, as has been before remarked, it was left by the terms of the contract in the power of the defendant to terminate the license and the compensation by abandoning the manufacture of mowing and reaping machines, thus leaving both uncertain as to duration. The author defines an entire contract as follows, (section 22:) ' An entire contract is a contract the consideration of which is entire on both sides. The entire fulfillment of the promise by either is a condition precedent to the fulfillment of any part of the promise by the other. Whenever, therefore, there is a contract to pay a gross sum for a certain and definite consideration, the contract is entire, and is not apportionable, either at law or in equity.' The author proceeds to give a series of examples in illustration of the rule, and in section 22 says: ' But when the work is in its nature apportionable, and no entire sum has been fixed as the price thereof, the contract will be held to be apportionable.' Thus, when the plaintiff was employed to repair a ship, and no total sum for repairs was fixed, and, after having done a portion of the work, he refused to go on until he should be paid therefor, it was held that he could recover a *quantum meruit*.' By the contract in question no gross sum was fixed, and the oiler was to be attached to each machine manufactured, and the parties manifested their understanding of the contract by their effort to apportion the value of the use of the oiler upon each machine manufactured. 2 Pars. Cont. p. 30, is again referred to as an instructive discussion of the subject by the author, coupled with a valuable citation of cases in illustration of the text, contained in the notes thereto. *Per Lee* v. *Beebe*, 13 Hun, 89. That case was decided in the general term, and seems to have been carefully considered. Two opinions were delivered, and the court was unanimous; and it seems to me that the case applies with directness upon the one under consideration, in support of the view of the contract, that it should be regarded severable, and not entire, in the sense claimed by the defendant. At page 92, Judge OSBORN says: ' Was this an entire and indivisible contract, in such a sense that before plaintiffs could exact payment of any amount they were bound to wait until the time had expired, and the last ton had been delivered? I think not. It seems to me entirely clear, on principle and authority, that the referee erred in his conclusion. By an examination of the contract it will be seen that nothing is said as to the time of payment; that the quantity to be delivered is not suggested. It is left wholly indefinite. It may require ten tons or a thousand to complete it. And so of the time when the several deliveries were to be made. By its very terms it is a contract to be performed in parts. Indeed, it is difficult to see how, in any sense, it can be regarded as an entire and indivisible contract.' Justice BOCKES remarks: ' The decision was put on the ground that the contract to deliver was entire and indivisible, and that no recovery could be had by plaintiffs until the end of the year, and on its fulfillment by them during the entire time the contract was to run. I am of the opinion that the referee was in error in his construction of the agreement entered into by the parties.' *Tipton* v. *Feitner*, 20 N. Y. 423. This case seems peculiarly applicable to the one under consideration. *Sickels* v. *Pattison*, 14 Wend. 257; *Roberts* v. *Havelock*, 3 Barn. & Adol. 404, 23 E. C. L. 402; *Robinson* v. *Green*, 3 Metc. (Mass.) 159; *Roots* v. *Lord Dormer*, 4 Barn. & Adol. 77; *Reformed P. D. Church* v. *Brown*, 54 Barb. 191. Again, it seems fairly inferable from the manner the former action was disposed of at the trial and upon appeal that the contract was regarded divisible and not entire, for, had it been regarded entire, in the sense contended by the defendant, that the right

to compensation by the plaintiff was conditioned upon a complete performance of the contract by the plaintiff, no right of action could then have accrued.   Certainly, if the objection to a recovery by the plaintiff upon the ground of the entirety of the contract was not sound in that action, it would seem to follow that it should be considered untenable in this.   It will be observed that the plaintiff's recovery in this action was in the order as to date in which the oiler was used by the defendant after the making of the contract, and embraced all that was due to plaintiff to September 1, 1884, thereby avoiding the objection of multiplicity of actions, and also a violation of the rule that when a party brings an action, and recovers a claim due by virtue of a contract, such recovery will constitute a bar to all claims of such party arising upon the same contract, which were due at the time of the commencement of such actions.   In *Bendernagle* v. *Cocks*, 19 Wend. 207, Judge COWEN says: ' The obvious principle is that several claims already due under the same contract shall be deemed one entire demand and cause of action.'   It will be noticed that to render the rule obligatory the claims must be due when the action is commenced, and only such are required to be included.   *O'Beirne* v. *Lloyd*, 43 N. Y. 248, is to the same effect.   Assuming the contract to be not entire, but severable, so far as the plaintiff's right to compensation is involved, his proceeding appears entirely regular and proper.   Certainly he has not multiplied actions oppressively to the defendant, nor have the actions which he has brought been to recover claims in the inverse order in which they accrued.   The first action was instituted about ten years after the defendant commenced using his oiler, and the recovery included the claims in regular order to September 1, 1884, and the present action was commenced by the plaintiff after the expiration of the patent and of the contract by lapse of time, and after the defendant had refused payment of his claim; and the former recovery was for the use of the oiler upon each machine, at the rate of five cents, the sum specified in the communication of Mr. Wood, sent to Mr. Parsons as the basis of the computation which he requested Mr. Parsons to make, and which he did make, and returned to Mr. Wood.   I have examined the cases cited by the counsel for the defendant as bearing upon the question of the entirety of the contract, and the effect of a recovery thereunder, and fail to discover wherein they establish a doctrine in hostility to the views above expressed.

"The remaining question for consideration is whether the defendant was relieved from the obligation to pay the royalties in consequence of the alleged invalidity of the plaintiff's patent, and the notice thereof, given by the defendant to the plaintiff in the manner and form disclosed by the evidence herein.   The notice relied upon by the defendant was given by Mr. J. Russell Parsons, who was the attorney for the defendant at the time the plaintiff's patent was obtained, and has since continued in that capacity, and the notice, which was verbal, was given, as he states, in October, 1880, and renewed in June, 1882, and was that the patent was invalid, and the defendant refused to pay royalties to the plaintiff.   Such notice seems very informal when resorted to as a ground for refusal by the defendant to pay the plaintiff compensation for the use of his patent, which was procured under the supervision and co-operation of the defendant, as the evidence indicates.   The notice was not directed to be given by the vote or resolution of the board of trustees of the company at any meeting thereof, nor was it even the result of the action of the auditing board at any meeting thereof, expressed by any vote or resolution, but, on the contrary, seems to have been but the expression of the opinion of individual members of the board to Mr. Parsons, and, as he states, amounting to a majority of such auditing board.   Again, such notice contained no specification of the ground upon which such alleged invalidity was claimed for the plaintiff, and the plaintiff was not thereby advised whether the objection to the patent was based upon a mere formal defect, or some-

thing of substance, more vital to its validity. It further appears that, although the notice was given in October, 1880, and repeated in June, 1882, when the first action was commenced, in 1883, no such defense was interposed in the answer, nor was any such defense insisted upon at the trial of that action, although the recovery of royalties extended to September, 1884, a period of nearly two years after the last alleged notice was given, in 1882. It can hardly be assumed with reason that such omission was the result of inadvertence, want of memory, or inability to produce the evidence upon the subject, as the intelligent attorney of the defendant who gave the notice was at hand, and cognizant of the proceedings in the former action, for he was a witness therein, as appears upon pages 15 and 50 of the printed case. It would seem that the defendant could not then have understood and intended that the plaintiff's rights were affected by such notice, to the extent of depriving him of royalties upon the ground that his patent was worthless; but, on the contrary, it seems more probable that those members of the auditing board who were unwilling that the plaintiff should be paid for the use of his patent merely intended that the plaintiff should be informed thereof, without at the time having in mind any other effect of such notice upon the patent. I am persuaded, in view of all the facts and circumstances, that the idea of terminating the contract and depriving the plaintiff of compensation upon the theory now asserted by the defendant could not then have been contemplated, but is suggestive of an afterthought.

"There is seemingly another obstacle in the way of the defendant, which is the omission to interpose such defense in the former action, or therein in some manner making resistance upon that ground to the plaintiff's right to recover for the use of the oiler by defendant subsequent to October, 1880. Certainly the defendant could have made that defense available in that action if it had been deemed valid, and the defendant had been disposed to assert it, but, instead of insisting upon it, the plaintiff was permitted, without even an objection upon that ground, to prove his claim, and to recover such compensation up to September, 1884. Such course on the part of the defendant has the appearance of an intention to waive such defense, if any existed; the recovery of the royalties during that period, which constituted a material subject of inquiry in that action, and was a part of the subject-matter involved therein, and was actually litigated and included in the judgment which the plaintiff recovered in that action. It would therefore seem, upon principle, that the defendant had become concluded by such judgment from now deriving any benefit from that defense in this action. Such defense, if valid, and had been asserted in that action, would have applied to a material part of the plaintiff's cause of action in that action, and not to an immaterial inquiry therein, and the practical effect which would follow allowing such defense in this action would seem to be to open and again litigate the merits of the former action upon a defense which was available in that action, and would have applied to the plaintiff's claim therein for the use of the oiler from October, 1880, to September, 1884, with all the force and effect that could be given to such defense in this action. The omission to assert such defense in the former action was apparently without excuse, if not intentionally omitted upon the ground that it was then deemed insufficient as an answer to the plaintiff's cause of action.

"In support of the views expressed in regard to the effect of the judgment recovered in the former action, I will proceed to refer to some of the adjudications upon that subject. In *Pray* v. *Hegeman*, 98 N. Y. 358, Judge ANDREWS says: 'The general rule is well settled that the estoppel of a former judgment extends to every material matter within the issues which was expressly litigated and determined, and also to those matters which, although not expressly determined, are comprehended and involved in the thing expressly stated and decided, whether they were or were not actually litigated

or considered. *Embury* v. *Conner*, 3 N. Y. 522; *Dunham* v. *Bower*, 77 N. Y. 76. It is not necessary to the conclusiveness of a former judgment that issue should have been taken upon the precise point controverted in the second action. Whatever is necessarily implied in the former decision is, for the purposes of the estoppel, deemed to have been actually decided.' In *Dunham* v. *Bower*, *supra*, Judge CHURCH remarks: 'Any fact or allegation which is expressly or impliedly involved in a judgment is merged in it, and cannot again be litigated.' In *Clemens* v. *Clemens*, 37 N. Y. 74, Judge DAVIES cites with approval the following portion of the opinion of Judge HOGEBOOM in *Harris* v. *Harris*, 36 Barb. 88: 'Such judgment or adjudication is final and conclusive, not only as to the matter actually determined, but as to every other matter which the parties might have litigated and have had decided as incident to or eventually connected with the subject-matter of the litigation, and every matter coming within the legitimate purview of the original action, both in respect to matters of claim and of defense.' In *Embury* v. *Conner*, 3 N. Y. 522, the rule is stated as follows: 'That the judgment or decree of a court possessing competent jurisdiction is, as a general rule, final, not only as to the subject-matter thereby actually determined, but as to every other matter which the parties might litigate in the same, and which they might have had decided, can admit of no doubt.' In *Hymes* v. *Estey*, 116 N. Y. 509, 22 N. E. Rep. 1087, Judge BRADLEY states the rule: ' But a judgment is *res adjudicata* as to those matters only which are within the subject-matter of the litigation, and those which, as incidental to or essentially connected with it, might legitimately have been litigated in the action.' *Manufacturing Co.* v. *Walker*, 114 N. Y. 7, 20 N. E. Rep. 625. In *Malloney* v. *Horan*, 49 N. Y. 116, Judge FOLGER remarks: 'And when the authorities say that the judgment is final and conclusive upon the parties to it as to all matters which might have been litigated and decided in the action, the expression must be limited as applicable to such matters as might have been used as a defense in that action against an adverse claim therein,—such matters as, if now considered, would involve an inquiry into the merits of the former judgment.' Even within the limit of the rule as thus declared the judgment in the former action between these parties must be regarded, I think, a bar to the defense sought to be made available by the defendant for the first time in this action. Certainly that defense could have been made against that part of the plaintiff's claim which accrued between October, 1880, and September, 1884, which constituted a material part of the plaintiff's cause of action in the former action. My attention has been directed to *Remington Paper Co.* v. *O'Dougherty*, 81 N. Y. 474. That case seems inapplicable, for two reasons: *First*, Mrs. O'Dougherty was not a party to the action in which the judgment was rendered, which was asserted as a bar; *second*, the question raised by her was immaterial in the former action, so far as the subject-matter therein was concerned, between the parties thereto. The material inquiry in the former action between the parties hereto was whether the plaintiff was entitled to recover of the defendant for the use of his oiler from February, 1872, to September, 1884, by virtue of the same contract under which a recovery is sought in this action. The answer interposed in that action put at issue the plaintiff's cause of action stated in the complaint herein, and the merits of the alleged cause of action were litigated and determined in the former action. The present action is brought under the same contract, between the same parties, to recover for the use of the oiler from September 1, 1884, to the close of the contract, February 27, 1889, when the patent and the contract expired. The subject-matter embraced in both actions, save in regard to the period the oiler was used by the defendant, is identical, and the present action is sought to be sustained by the same evidence produced by the former action, except in regard to the refusal to pay the royalties on account of the alleged invalidity of the patent,

and ·notice thereof to the plaintiff. I am convinced that the judgment recovered by the plaintiff in the former action must be regarded, in view of all the facts and circumstances disclosed herein, a bar to the defense sought to be made available by the defendant, based upon the refusal to pay the plaintiff royalties, upon the ground of the alleged invalidity of the plaintiff's patent, and notice thereof to the plaintiff. My conclusion is that the plaintiff is entitled to recover of the defendant the sum of $7,318.75 for the use or the right to use the plaintiff's oiler upon 146,375 mowing and reaping machines made between the 1st day of September, 1884, and the 27th day of February, 1889, the date of the expiration of the contract by termination of the patent, with interest thereon from the 27th day of February, 1889, to the 27th day of December, 1891, with costs of the action."

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

*Cowen, Dickerson, Nicoll & Brown,* (*Esek Cowen,* of counsel,) for appellant. *Lansing & Cantwell,* (*James Lansing,* of counsel,) for respondent.

PER CURIAM. Defendant insists that the contract under which plaintiff claims was single, and its breach constitutes but a single cause of action, and plaintiff, having in a former action chosen to sue for and recover what he now claims was only part of his damage, cannot recover the balance. We are of the opinion that the learned referee has reached the correct conclusion as to this position of the defendant, and, referring to his opinion in that regard, deem it unnecessary to further discuss the matter. 2 Pars. Cont. 29–31; *Oil Co.* v. *Brewer,* 66 Pa. St. 354; *Sickels* v. *Pattison,* 14 Wend. 257; *Per Lee* v. *Beebe,* 13 Hun, 89; *Tipton* v. *Feitner,* 20 N. Y. 423. Defendant also claims that, plaintiff's patent being in fact void after the notices claimed to have been given in October, 1880, and June, 1882, all liability to pay for the use of plaintiff's patent ceased. It concedes that the invalidity of plaintiff's patent, alone, is no defense to the action as to defendant as licensee, (*Marston* v. *Swett,* 66 N. Y. 207, 82 N. Y. 526,) but it insists that at the time mentioned notice was given to plaintiff that it would pay no more under the contract, and that the invalidity of the patent after such notice should prevent a recovery. The referee held that no notice was given by defendant to plaintiff sufficient to terminate the contract. We coincide with his views, and, again referring to his opinion in that regard, will not discuss the matter, except to make a single suggestion. We are unable to see that any valid action was taken by defendant with a view of terminating the contract with plaintiff, or giving him notice of such termination. The defendant could only act through its trustees. *Beveridge* v. *Railroad Co.,* 112 N. Y. 22, 19 N. E. Rep. 489. It does not appear that the trustees ever met, acted, or voted in the matter. It is not shown that the auditing board had any authority to cancel or annul the contract made by the corporation, or to serve any notice upon the plaintiff; and, if such board had this power, it does not appear that it attempted to exercise it. No vote was taken, nor any action, except an expression of opinion by the individual members of the board. The evidence, we think, sustains the finding of the referee. The first action was commenced in July, 1883. The alleged notices were given by defendant in October, 1880, and June, 1882. Therefore, although, if in fact any proper and authorized notices were given to plaintiff by defendant, it had a complete defense to any action of the plaintiff since October, 1880, no such defense was asserted in its answer, or claimed on the trial, in the first action. This failure on the part of the defendant to claim such a defense in the pleadings or on the trial of the first action is virtually an admission that no such defense existed, and tends to show that the conclusion of the learned referee was correct. The judgment in the first action necessarily determined that plaintiff's license to defendant continued until September 1, 1884, two years after the alleged notices; and this fact was not controverted by defendant in the pleadings or on

the trial. It follows that, as the former judgment does not prevent the plaintiff from recovering for the use of his patent since September 1, 1884, and the invalidity of the patent alone is no defense to the action, and no sufficient notice was given by defendant to plaintiff that it would pay no more under the contract or license, the plaintiff is entitled to judgment in the action. It is not then necessary to consider also the position taken by the learned referee, that the former judgment was a bar to the defense asserted by defendant, based upon the invalidity of the plaintiff's patent, and the notice to him, alleged to have been given by defendant.

Judgment should be affirmed, with costs.    All concur.