WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—December, 1887.

ROSE *v.* ROSE.

*In the matter of the judicial settlement of the account of* PETER ROSE, *as executor of the will of* JOSEPH ROSE, *deceased.*

The provisions of Code Civ. Pro., § 2734, excluding the testimony of an executor in support of a claim for credit for disbursements, the vouchers in respect whereof have been lost, may be waived by those for whose protection the rule was established. Such a waiver is effected where the parties objecting to the account call the executor as a witness, and examine him as to the alleged payments.

The same rule applies to a case of imperfect vouchers, explained by the testimony of the executor elicited by the objectors.

The will of testator directed the executor to sell his real property, at such times and in such lots as would be to the best advantage; invest the proceeds and apply the interest to the support of his widow and children during the minority of the latter; and ultimately to divide the principal. The executor erected, with funds of the estate, a dwelling-house, upon a parcel of the land, which was afterwards sold, with the improvements, at a loss of $650. The evidence did not clearly disclose by whom the sale and conveyance were made.—

*Held,* that, if the sale was made by the executor, he was liable for the deficit, having exceeded the authority conferred by the will; but that, if the beneficiaries sold the property, they conveyed a good title, and must be deemed to have taken the land and dwelling in lieu of the proceeds of sale,—thereby ratifying the executor's act in erecting the latter.

ABOUT twenty years ago, the testator, Joseph Rose, died at Stony Point, Rockland county, leaving, him surviving, his widow, Charlotte Rose, and two infant children, Wallace and Emma. The will was duly admitted to probate by the Surrogate of that county,

the material substance of the instrument being stated in the opinion.   In 1882, this proceeding for an accounting by the executor was commenced, but the county judge of that county, who acted as Surrogate, and the District Attorney, being both disqualified to act therein, the matter was, under § 2485 of the Code, sent to the Surrogate of Westchester county.

Before the commencement of the proceeding, the widow had intermarried with a man by the name of Babcock, and pending it, the son, Wallace Rose, died intestate, leaving no widow or children.   His administrators, Charlotte Babcock and John W. Furman, afterwards became parties to this proceeding.   The executor, pursuant to the direction of the will, sold a parcel of real estate, left by the testator, for $3,500, of which $2,000 was paid in cash, and a mortgage was given for the $1,500, balance.   The widow refused to sign the conveyance to the purchaser, and instituted proceedings to recover her dower.   In consequence, the purchaser refused to pay interest on the mortgage. The latter was ultimately foreclosed, and the premises brought at the sale $1,800, the estate realizing, after deduction of the costs and expenses, about $1,500. On the hearing in this matter, some of the vouchers for alleged payments made by the executor were lost, and others were imperfect.   The contestants put the executor upon the stand as a witness, and he was fully examined as to such payments.

Other facts sufficiently appear in the opinion.

CHARLES C. SUFFERN, and ALONZO WHEELER, for executor.

H. B. BATCHELDER, for contestants.

W. M. BARTON, special guardian.

THE SURROGATE.—It is provided by § 2734 of the Code, that an executor may be allowed items of credit for payments exceeding $20, if he proves, by his own oath or otherwise, that he took no vouchers; or that the vouchers have been lost or destroyed, by proving the payments by the persons to whom they were made, or if they be dead or cannot be found, by any competent evidence, other than his own oath or that of his wife. The rigid rule of the Revised Statutes (2 R. S., 92, §§ 54, 55) is thus relaxed. Under the present law, in a case of an accounting where no opposition was interposed, it would be incumbent on the Surrogate, in case of lost vouchers, to exclude the testimony of the executor as to the alleged payments. The rule is stringent, that beneficiaries may be protected from possible dishonesty of those acting in fiduciary capacities. So, his oath would be excluded, in case of a contest, on objection made, to sustain the letter as well as the policy of the statute. But, where the contesting party himself calls and examines the executor as to such payments, a different question arises. Is he not bound by his own act? It is very well settled that a party may waive a statutory, and even a constitutional, provision made for his benefit, and after doing so, he cannot afterward ask for its protection (Lee v. Tillotson, 24 *Wend.*, 337; Embury v. Conner, 3 *N. Y.*, 511; Matter of Cooper, 93 *N. Y.*, 507).

Hence, the evidence of the executor, concerning payments made by him where he took vouchers, which are lost, is binding upon the contestants. This rule will also apply to the case of imperfect vouchers, which

are rendered perfect by the oral testimony of the executor elicited by the contestants.   *   *   *

On the foreclosure sale of the Mackey mortgage, the executor is undoubtedly correct in charging himself with the amount received by him, after deducting the cost of foreclosure. If he were to be charged with the $1,800, for which the property was sold, he would be entitled to credit for the amount of the costs and expenses of the sale.

So far as the items of the account are concerned, they are allowed with the above exceptions. Under the circumstances, the executor does not appear to be fairly liable for any more interest than he has charged himself with.

But there is another, and a serious, matter to the parties concerned, if allegations made by counsel, are correct. The testator by his will, directed a sale of all his real estate, at such time and in such lots as would be to the best advantage, and that the executor invest the proceeds to the best advantage, and that the interest arising therefrom, with as much of the principal as should be needed, should be applied by him to the support of his wife and children, until the latter should become of age, and then divide what should remain, if his wife continued unmarried, equally between her and their two children, and if she married, it was to be divided equally between the children. In 1869, the executor sold to Mary Mackey, wife of David Mackey one parcel of real estate for $3,500, of which $2,000 was paid in cash, and a mortgage was given for the balance. The executor erected a small dwelling-house on another parcel of land of some five

or six acres, of which the testator died seized, at a cost of about $1,400, which he paid out of the said sum of $2,000, part of the proceeds of sale of the parcel sold to Mrs. Mackey.   The widow and children lived in the new house for a year or two, when they left it, and it was rented to parties from whom little rent was realized.

Ultimately, these few acres, it is alleged, were sold, presumably by the executor, on which he had erected the house, for $800,—thus causing a loss to the estate of $600, besides the value of the land.   Of that value there is no evidence.   Taking into consideration the facts that only one acre of it was cleared land, the rest being wooded, producing but scanty crops of any kind, scarcely yielding enough to pay for the labor, and situated in the town of Stony Point, among the foot-hills of the Dunderberg, it could have had but a small market value without the new dwelling-house. Still it must have had some value—say $50.   This would make the whole loss to the estate $650.   As the erection of the house was not authorized by the will, the executor is liable for this loss, if the allegations in regard to the sale be true.   If they are not, then it would seem that the land still belongs to the estate as legal assets, as the will directed the executor to sell it, and thereby operated an equitable conversion.

If, however, it were sold and conveyed by the widow and children, or child, after the latter became of age, it indicated clearly that they elected to reconvert it into land.   As no one interested in the estate could be affected by such election, other than themselves,

they had an undoubted right to make it (2 Jarm. on Wills, 5th Am. ed., 188; Prentice v. Janssen, 79 *N. Y.*, 478). And their deed would convey a good title. But in thus electing to take the land with the house upon it instead of the proceeds of its sale, and selling it themselves, they sanctioned and ratified the act of the executor in erecting the house, and cannot, therefore, seek to hold him liable for any loss consequent upon a violation of duty in that regard.

The facts, relating to the sale of the last parcel of land, are not disclosed with sufficient distinctness to warrant any decision other than alternative. The principles above enumerated may be applied, in either case, to the actually existing facts, and which must be well known to the parties.

The executor appears to have acted in good faith throughout, and no valid reason is discovered to warrant the witholding of his commissions. Both parties are entitled to costs out of the fund, if any remain after the deduction of the commissions.

Decree accordingly.