## In re GEROW'S ESTATE.

*(Surrogate's Court, Rockland County, Filed February 22, 1892.)*

1. EXECUTORS—JUDICIAL ACCOUNTING—ABSENCE OF VOUCHERS.

   To entitle an executor to credit for payments for which he produces no vouchers, he must give competent evidence of such payment "other than his own oath." Code Civ. Pro. sec. 2734.

2. SAME—WHEN ENTITLED TO RETAIN COMMISSIONS.

   An executor cannot deduct a sum in excess of his legal commissions, nor can he retain same until judicially allowed.

Judicial settlement of executrix's accounts.

Abram A. Demarest, for executrix; Snider & Hopper, for contestant.

WEIANT, S.—I find from the evidence the receipts and dis-

bursements of the executrix as set forth in the following summary:

```
Principal estate:
   Amount of inventory ...........................  $15,764 72
I credit her as follows:
Chattels received by the widow................  $ 47 25
Moneys retained by the widow................    168 00
Paid for insurance on estate property.........    13 35
Referee's fees and expenses on sale of Garrabrant
   property ..................................     46 00
                                               ─────────
                                                            274 60

   Leaving a balance of the principal estate of..........  $15,490 12
```

—Subject to other allowances for the expenses of foreclosing the Emily Garrabrant and Amelia Snedeker mortgages, to be determined and adjusted on the settlement of the decree herein.

As against the balance of this principal estate, the executrix is entitled to credit for the following securities and properties in her hands:

```
Mortgage of Gurnee ..................................  $1,000 00
Mortgage of Sipple ..................................   1,500 00
Mortgage of Baker ...................................     100 00
Mortgage of Hamilton ................................     500 00
Mortgage of John P. Garrabrant ......................     300 00
Mortgage of Hedges ..................................   4,000 00
Mortgage of Green ...................................     500 00
Mortgage of Scott ...................................     300 00
Mortgage of Wagonhoffer .............................   1,000 00
Mortgage of Hines ...................................   1,500 00
Mortgage of Gerow ...................................   1,500 00
Deposit in Irving Savings Bank.......................      10 36
Deposit in Seaman's Savings Bank.....................     252 62
Garrabrant place, bought in .........................     338 95
Snedeker place, bought in ...........................   1,500 00
                                                     ──────────
                                                      $14,301 93
```

—Leaving a balance of uninvested funds of the principal estate of $1,188.19, subject to the deductions for the foreclosure expenditures aforesaid, and the lawful commissions of the executrix, and the proper costs and expenses of this accounting.

As to the interest or income estate, I find that the executrix has received the following sums from the following securities and sources: Scott mortgage, $135; Green mortgage, $240; Emily Garrabrant mortgage, $20; Hedges mortgage, $1,678; John P. Garrabrant mortgage, $74; Garrison mortgage, $6; Baker mortgage, $50; Snedeker mortgage, $450; rent of Snedeker place, $98; Gurnee mortgage, $480; Sipple mortgage, $720; Riley mortgage, $90; Wagonhoffer mortgage, $420; Murphy mortgage, $24; Hines mortgage, $630; Gerow mortgage, $135; interest accrued on deposit in Seaman's Savings Bank, $242.12; and interest accrued on deposit in Irving Savings Bank, $103.42; making the total income, $5,595.54. It is admitted by the widow and contestant, to whom the income is payable— and her receipt therefor is filed—that all of the interest was paid over to her during the years 1883, 1884, 1885 and 1886, to the amount of the respective sums of $75, $621, $812 and $752, and that thereafter, in the years 1887, 1888, 1889 and 1890, interest to the amount of the respective sums of $300, $250, $250 and $200 were paid over to her, making an aggregate of $3,260, which, with the sum of $560, of interest due on the Hedges mortgage at the time of the taking of the inventory, and which seems to have been paid over to the widow, as she admits, under a misapprehension, and which I think should be charged against her, makes an aggregate of payments out of the income estate of $3,820, leaving a balance of income of $1,775.54. In making these charges against the executrix, I have charged her with the receipts which she admits in her testimony of November 20, 1891, and shall allow an amendment of the accounts so as to take in these additional receipts, and also to permit credits for the expenses of the two foreclosure suits. These computations and items will be open to correction on the settlement of the decree.

Upon the claims of the executrix and widow, respectively, there is a large difference as to the payment made by the former to the latter, of income, during the years 1887, 1888, 1889 and 1890. The executrix testifies that she paid Mrs. Gerow the

whole of the income, but she produces only one or two vouchers for such payments, and confesses that she took no others. The contestant objects to the allowance of any payments for which vouchers are not produced. There is no evidence of the payments having been made, beyond the admissions of the widow, by the receipts which she has presented and filed, except the testimony of the executrix alone. It is true that two or three payments have been testified to by the witness Arthur Gerow, but they do not go beyond the amount that the widow admits in her receipt. The question is thus presented whether or not this executrix can be credited, in the absence of vouchers, for further payments, without evidence in addition to her own testimony. Section 2734 of the Code of Civil Procedure provides that "upon an accounting by an executor or administrator the accounting party must produce and file a voucher for every payment, except in one of the following cases." Then follow two subdivisions giving these exceptions. No question is raised under subdivision 1. Subdivision 2 is as follows:

"If he proves by his own oath, or another's testimony, that he did not take a voucher when he made the payment, or that the voucher then taken by him has been lost or destroyed, he may be allowed any item, the payment of which he satisfactorily proves by the testimony of the person to whom he made it, or if that person is dead, or cannot, after diligent search, be found, by any competent evidence, other than his own oath or that of his wife.'"

Here no vouchers were taken. The executrix so confesses. The widow—the contestant—to whom the payments were made, denies the payments, beyond the amounts stated in her receipt. There is no evidence of the payments, given by any person, nor any evidence, from any source, of further payments than those specified in the widow's receipt, except the testimony of the executrix alone. As to her, the statute says the "competent evidence" must be "other than her own oath." If this section of the Code is to be given force, I see no way to allow the executrix these further credits. Its language is so specific that in a case so closely drawn as this the credits cannot be allowed without

holding directly against the words and spirit of the statute requiring the production of vouchers. The statute says, "must produce and file a voucher for every payment, except," etc. The following authorities sustain this view: Tickel v. Quinn, 1 Dem. Sur. 425; *In re* Rowland, 5 Dem. Sur. 216; *In re* Topping's Estate (Sup.), 14 N. Y. Supp. 495-598; *In re* Taft's Estate (Sup.), 8 N. Y. Supp. 282, 283; Willcox v. Smith, 26 Barb. 316; *In re* Hertfelder's Estate, 1 Law Bull. 96. In *Re* Langlois' Estate (Surr.), 14 N. Y. Supp. 146, the learned surrogate allowed payments without the production of vouchers, and certainly went to the margin in so doing. He does not, however, as I understand his opinion, take the position that a surrogate may override the express words of the statute, upon his own convictions of justice, where the provisions of the statute as to the requisite evidence have not been complied with. If such were his determination, I should dissent from the same. He says: "My own belief is that the admission in the argument by the attorney for the objector, that the account is correct, is a complete waiver of the objection. However, I do not place my decision on that ground." In speaking further of the proof, he says: "It may not be a literal compliance with section 2734; but the evidence admitted, and the practical acquiescence of the contestants in the correctness of the items, convinces me that justice demands their allowance."

I am therefore led to believe that the learned surrogate found in the case competent evidence, other than the oath of the executor or administrator, and in that event, the case is not an authority that such payments can be allowed without vouchers, except by compliance with the other provisions of the statute, showing an exception therein provided for. If a surrogate can substitute his own sense of justice in place of that of the Legislature, as embodied in the rule prescribed by this section of the Code, and determine that vouchers need not be taken, then the rule is practically annulled. The wisdom of the rule is apparent. It puts upon the trustee the duty of taking vouchers for his payments. He is given a trust fund, and he should take upon him-

self the burden of showing that he has disposed of it according to his trust. It is no hardship to require of him that he should take and produce vouchers showing what disposition he has made of the fund. Payment is regarded, in law, as an affirmative matter. The rule, when applied to this case, shows it to be a just and wise one. This executrix was dealing with a very old lady—one who cannot read or write. She was therefore, in a great measure, at the whim or purpose of the executrix, as to payments. In case of death, either party would be in the power of the other. The Legislature, no doubt, in the enactment of this section, took full notice of the inequities and injustices that might occur, and formulated this statute, embodying the rule which would best serve the interests of justice; and, this being so, it seems to me that a surrogate has no right to substitute his own rule in place thereof. He should follow it, in its letter and spirit, in the absence of a compliance with the requirements thereof by the accounting party, and disallow such alleged payments. In the case of Rose v. Rose, 6 Dem. Sur. 26, cited by the counsel for the executrix, the learned surrogate held "that the rule was stringent, that beneficiaries may be protected from possible dishonesty of those acting in a fiduciary capacity;" and yet he decided that, where the "contesting party himself calls and examines the executor as to such payments, a different question arises." It seems to me that this is ingrafting upon the statute another exception to the rule there laid down. I think it fair to presume that the Legislature embodied all of the exceptions therein, intended to be available. In fact, the section expressly says, "other than his own oath," and yet the decision of the learned surrogate would make the executor's "own oath" sufficient. I do not mean to hold that this statutory right may not be waived by a contestant, but it seems to me that, to constitute a waiver of the same, something more than questioning the accounting party as to payments is necessary to constitute a waiver of this statutory right. Section 2734 of the Code is a modification of the former statute, relaxing the rule in favor of the representative of an estate under certain circum-

stances, to prevent injustice being done, and to thus remove a serious obstacle to the assumption of such trusts. Decisions of the courts, indicating such modification, no doubt led to this modification. It is reasonable to suppose that the Legislature has, by the exceptions set forth in this section, relaxed the rule to the required extent to do no injustice to an executor or administrator, until future experience indicates a further modification. This power is not conferred upon surrogates. There is no proof of the extent, in the aggregate, of payments under $20 each, and, as the payments allowed are far in excess of the $500, that sum might be allowed where vouchers are not produced, but no further credit can be allowed for such payments. It is quite probable that the receipt of the widow does not express the exact amount of the payments to her. It is all, however, that she concedes. It may be that an injustice will be done the executrix, in disallowing further payments, but, if so, it is due to her own carelessness and negligence. She is an intelligent woman, of some business experience and prudence; and ordinary care indicated to her that, in order to make a proper showing of her disposition of the estate, she should have provided herself with some writings in verification of her payments.

The evidence shows that the executrix has deducted 5 per cent., as her commissions, accordingly as she paid over the moneys. This is not only in excess of her legal commissions, but she had no right to retain the same until judicially allowed. *In re* Butler, 1 Con. Sur. 58-70, 9 N. Y. Supp. 641, and cases there cited. The same will be adjusted by the decree. Let a decree be presented for settlemnt and entry; costs to be taxed and allowed at such time.