EMBURY and others *vs.* CONNER and another.

A statute, it seems, which authorizes the transfer of one man's property to another, without the consent of the owner, is unconstitutional and void, although compensation is made.

But a party may renounce a constitutional provision made for his benefit, and a law therefore, which provides for the transfer of property from one individual to another with the consent of the owner, is not unconstitutional.

And where such a law does not require the consent to be in writing, it may be manifested by parol acts and declarations so as to effect a transfer of the title to real estate, notwithstanding the statute of frauds.

The provision in the act relating to the city of New-York, (2 *R. L.* 416, § 179,) which authorizes the commissioners of estimate and assessment to include in their assessment, the *whole* of a lot when *part* only is required for the use of a street, and vesting the title to the whole in the corporation, should, it seems, be so read and construed as to require the *consent of the owner* to the appropriation of the part not required for the public use, and therefore is not unconstitutional.

And where, under that act, proceedings are taken with the consent of the owner of lands, and are duly confirmed by the supreme court, and the damages paid pursuant to the statute, such proceedings operate as a conveyance and vest the title to the corporation.

Embury *v.* Conner.

In an action of ejectment where the question is whether the corporation of the city of New-York has acquired title to lands by virtue of proceedings taken under the charter for the purpose of widening a street, the papers used on the application to the supreme court for a confirmation of the report of the commissioners of estimate and assessment and filed in that court, are competent evidence for the purpose of sustaining the proceedings, and may be used to show that the party assailing the proceedings consented to relinquish to the corporation the *residue* of a lot where the whole is not taken for the public use.

Where, under such proceedings, the commissioners of estimate and assessment have assessed damages for the residue of a lot as well as the part actually taken for widening a street, the receipt of such damages by the owner is evidence, it seems, that he assented to the proceedings.

The judgment of a court of competent jurisdiction is final and conclusive upon the parties, not only as to the matter actually determined, but as to every other matter which the parties might have litigated in the cause and might have had determined. *Per* JEWETT, J.

A fact put in issue by the record and found by the judgment of a court possessing the requisite jurisdiction, can not be again litigated by the parties or their privies.

The supreme court exercises the powers conferred upon it by the New-York street laws as *a court* and not as commissioners appointed by the legislature. But those powers are wholly derived from the statutes and do not belong to it as a court of general jurisdiction.

And under those statutes nothing is submitted to the supreme court except the appointment of commissioners and the confirmation of their report, and this involves only the fitness of the persons named as commissioners, the regularity of the proceedings of the corporation and of the commissioners, and the justice of the assessment made and reported to the court. *Per* JEWETT, J.

The order of the supreme court therefore confirming the report of the commissioners is conclusive only in respect to the regularity of the proceedings, and not as to their effect in transferring a title. *Per* JEWETT, J.

The title in such cases passes to the corporation *by force of the statute,* and not by virtue of the adjudication of the supreme court. *Per* JEWETT, J.

PETER EMBURY, Hannah Aymar, and Margaret Jacot, brought ejectment in the superior court of the city of New-York, against James Conner and William C. Conner, to recover a lot of land situate at the corner of Ann and Nassau streets in said city. In June, 1791, and until his death in 1815, Daniel Aymar was seised of the premises in fee, together with some other lands contiguous thereto, which, in 1829, were taken by the corporation of the city in widening Ann-street. In 1821, the heirs at law of Daniel Aymar, together with the executors of his last will, united in a conveyance of the whole premises of which

he so died seised, to Philip Embury, who, in the same year, conveyed them as follows: Two undivided fifth parts to Peter Embury; two undivided fifth parts to Hannah Aymar; and the residue, being one undivided fifth part, to Margaret Jacot. These persons have continued to be the owners of the premises in question as tenants in common in fee simple, unless they have been divested of their estate therein under the proceedings taken by the corporation of the city of New-York for the widening of Ann-street, and the confirmation thereof by the supreme court.

On the 22d day of December, 1828, the common council of New-York resolved to widen Ann-street, according to a plan which would take all of the land of which the plaintiffs were so the owners, except the premises in question, and directed their counsel to take the proper steps to carry the resolution into effect. Accordingly, in February, 1829, the mayor, aldermen and commonalty of New-York presented their petition to the supreme court, praying that said court would, in pursuance of the act entitled " an act to reduce the several laws relating particularly to the city of New-York into one act," passed the 9th of April, 1813, and also in pursuance of the act entitled " an act authorizing the mayor, aldermen and commonalty of the city of New-York to close streets and roads," passed 20th of April, 1818, appoint three commissioners to exercise the powers conferred by those statutes. On the 14th of March, 1829, a rule was granted by the supreme court appointing John Slidell, Cornelius Harsen, and Thomas R. Smith commissioners. On the 8th of July, 1829, the commissioners made their report, in which they described the same parcel of land which had been described in said petition, *and which did not include the premises in question,* as being required for the purpose of widening Ann-street; and they also reported that the devisees of Daniel Aymar were seised in fee of the parcel so described. They further reported that said parcel was part only of a lot of land of the whole of which the said devisees of Aymar were seised in fee, and that they, the said commissioners, deemed it expedient and proper to include and comprise in their estimate and assessment

the *whole of the residue of said lot of land,* in like manner as if such residue was also required for widening the street. The *residue* mentioned in the report was particularly described therein, and is the premises in question in this suit. The commissioners further reported that they had assessed the damages to the devisees of Aymar by and in consequence of relinquishing their interest in said parcel of land, including such residue, at the sum of $11,220.

A copy of said report having been deposited in the clerk's office of New-York, and notice given, and objections having been made to it, the commissioners, on the 31st day of July, 1829, re-considered it and made an additional report, in which they increased their assessment of loss and damage to $11,370. On the 22d of August, 1829, the supreme court confirmed the report of the commissioners after hearing the objections thereto. On the 27th day of March, 1830, the corporation conveyed the premises in question to James Conner, for the sum of $4700; and on the 23d day of August in the same year paid said $11,370 to the said Peter Embury, Hannah Aymar and David Jacot, (who was the husband of Margaret Jacot,) and who executed receipts therefor.

James Conner, on the 31st day of July, 1835, sold and conveyed the premises to E. Dunkin for $5500. This suit was commenced on the 9th day of March, 1847, the defendants being in possession. During this time Hannah Aymar remained a single woman, and Margaret Jacot had been a widow from seven to ten years, before this suit was commenced.

On the trial in December, 1847, SANDFORD, J. ruled that no title to the premises in question had been acquired under the proceedings for widening Ann-street; and that the receipt by the plaintiffs of the moneys awarded to them as their damages, did not constitute an estoppel *in pais,* which could be set up in bar of the action. The plaintiffs accordingly had a verdict which the superior court refused to set aside, and after judgment the defendants appealed to this court.

*W. Kent,* for appellants.

*E. Sandford,* for respondents.

JEWETT, J.   On the part of the defendants, it is claimed, that the facts show that the corporation of New-York acquired the title to the premises in question, and legally conveyed them to James Conner, thereby showing an outstanding title adverse and paramount to that set up by the plaintiffs.   On the other hand it is contended that the corporation of New-York did not, by said proceedings, acquire any title to the premises in question, on the ground that section 179 of the act of April 9, 1813, entitled " an act to reduce the several laws relating particularly to the city of New-York, into one act," (2 *R. L.* 416,) contains the only authority attempted to be conferred by law, upon the commissioners of estimate and assessment to include parts of lots not required to be taken for widening or opening streets in their estimate and assessment, and to vest the title thereto in the corporation of the city of New-York, in fee, and that this section of the statute is void, because the legislature assumed to confer a power to take the property of one, without his consent, and apply it to the use of another.

By that section it is enacted that it shall be lawful for the commissioners, so to be appointed by the court, for any of the purposes aforesaid, in all cases where part only of any lot or lots, parcel or parcels of land, or of any other tenements, hereditaments or premises, shall be required for any the aforesaid purposes, leaving a *residue* of such lot or lots, parcel or parcels of land or other premises belonging to the same owner or owners or parties in interest, to whom the said part thereof so required for such purpose, shall belong, and they the said commissioners shall deem it expedient and proper so to do, to include and comprise in their said estimate and assessment, the whole or any part of such said residue of such lot or lots, or parcel or parcels of land or other premises along with the part of the same so required for the said purpose of the said intended operation and improvement, in like manner as if the said residue, or the part

thereof so to be included in the said estimate and assessment, was required for the purpose of making the said operation and improvement so to be made, and all the said part and residue of the said lot or lots, parcel or parcels of land or other premises so included in the said estimate and assessment, and not required for the purpose of making such said operation and improvement, shall,.on the confirmation by the said court of the said report of the commissioners, or such further report as may be made in the premises, become, and be vested in the said mayor, aldermen and commonalty of the city of New-York, and their successors, in fee simple, who may appropriate the same, or any part thereof, to public uses, and shall and may sell and dispose of the residue thereof, or the whole in case of no appropriation of any part thereof for public uses; and in case of the sale of the same, or any part thereof, the proceeds shall be disposed of in the manner and for the purposes as provided for by the next section.

It needs no argument to show that the end and design of this section was not to take private property for the use of the public. It manifestly goes upon the ground that the property so authorized to be taken is not wanted for the purpose of forming or improving a street, the object in view for which the proceedings are instituted. In the *Matter of Albany-street*, (11 *Wend.* 148,) the constitutionality of this enactment came directly under the consideration of the supreme court, on application to confirm the report of the commissioners in that matter. The court then held that if that provision was intended merely to give to the corporation *capacity* to take property under such circumstances, with the *consent* of the owner, and then to dispose of it, there could be no objection to it. But if it was to be taken literally, that the commissioners might, against the consent of the owner, take the whole lot, when only a part was required for public use, and the residue to be applied to private use, it assumed a power which the legislature did not possess. This decision went mainly upon the implication contained in the last member of the clause of section seven of article seven of the constitution of 1821, that "No person shall be deprived of life, liberty, or prop

erty, *without due process of law :* nor shall private property be taken for public use without just compensation." Chief Justice Savage said, " The constitution, by authorizing the appropriation of private property to public use, impliedly declares, that for any other use, private property shall not be taken from one and applied to the private use of another." In *Bloodgood* v. *The Mohawk and Hudson Railroad Co.* (18 *Wend.* 59,) Mr. Senator Tracy said the words should be construed " as equivalent to a constitutional declaration that private property, without the consent of the owner, shall be taken *only* for the public use, and then only upon a just compensation." Bronson, J. in *Taylor* v. *Porter*, (4 *Hill*, 147,) in reference to this question, said, that although he felt no disposition to question the soundness of these views, yet that it seemed to him that the case stood stronger upon the first member of the clause, " No person shall be deprived of life, liberty or property, *without due process of law.*" That the words "due process of law" in that place could not mean less than a prosecution or suit instituted and conducted according to the prescribed forms and solemnities for ascertaining guilt, or determining the title to property.

The same doctrine was held in the *Matter of John and Cherry streets*, (19 *Wend.* 659,) and by the chancellor in *Varick* v. *Smith*, 5 *Paige*, 137,) and was admitted by all the members of the court for the correction of errors, whose opinions have been reported in the case referred to of *Bloodgood* v. *The Mohawk and Hudson Railroad Company.*

I think these decisions should be regarded as having settled the point that a statute is unconstitutional and void which authorizes the transfer of one man's property to another without the consent of the owner, although compensation is made. The late Chancellor Kent, in reference to the decision in *Taylor* v. *Porter*, says, " I apprehend that the decision of the court was founded on just principles, and that taking private property for *private* uses without the consent of the owner, is an abuse of the right of eminent domain, and contrary to fundamental and constitutional doctrine in the English and American law. (2 *Kent's Com. 5th ed. note c*, 340.)

But it is insisted that as the enactment is only held to be void on the ground that it takes private property for private uses against the owner's consent, if the consent be given, all objection on the ground of unconstitutionality is removed. The decisions to which I have referred proceed upon that principle; and Mr. Justice Bronson, in *Taylor* v. *Porter*, in terms concedes that the objection has no application when the owner consents. If we read the statute in question with a proviso that the owner consent, and I think we should, that consent removes all obstacle, and lets the statute in to operate the same as if it had in terms contained the condition.

But it is said that even then the statute of frauds (2 *R. S.* 134, § 6) creates an insuperable difficulty in the way of the defendants, on the ground that such consent not being in writing, the title would still be void under it. But I think not. If the principles held in the case of *Baker* v. *Braman*, (6 *Hill*, 47,) are sound—and I think that they are—they may be properly applied in this case. It was there held that the owner's consent took away all objection to the statute in relation to private roads; although the road was an incorporeal hereditament and could not therefore be granted even at common law without a deed, as it was competent for the legislature to create an exception both to the common law rule and the statute of frauds; and that the legislature had done so by the statute then in question. The action in that case was brought to recover the damages assessed by a jury, for a private road, which the commissioners of highways had laid out through the plaintiff's lands pursuant to 1 *R. S.* 517, §§ 77, 78. It was there held that a person might renounce a constitutional provision made for his benefit, and that if a private road be laid out pursuant to the statute, with the consent of the owner of the land, the proceeding was valid, and that such consent need not be in writing; that a parol consent was sufficient; and that the bringing of an action after the road was so laid out and his damages had been assessed, was a sufficient manifestation of consent, and an adoption of the machinery provided by the statute for effectuating the grant. *Lee* v. *Tillotson*, (24 *Wend.* 337,) and *The People* v. *Murray*, (5 *Hill*,

472,) are cases to show that a party may waive a constitutiona.
as well as a statute provision made for his own benefit.

As it respects the evidence to show the consent of the owners
of the premises in question, to the taking thereof by the com-
missioners, under § 179, we have in proof their report and addi-
tional report, in each of which that fact in substance is asserted.
In the report it is as follows : " We have estimated and assessed
the loss and damage to the said devisees of Daniel Aymar, from
the said widening and improving of Ann-street, by and in con-
sequence of their *relinquishing* their interest in the last de-
scribed piece or parcel of land, which is required for that purpose,
and also in the *said residue* so included and comprised as afore-
said, and in the buildings situated on said two pieces of land, to
amount to the sum of eleven thousand two hundred and twenty
dollars." This report was made and signed by the commission-
ers on the 8th day of July, 1829. And having deposited a copy
thereof, and given the notice required by law, for bringing in
written objections, and that the same would be presented to the
court for confirmation ; the commissioners, on the 31st day of
July, 1829, made an additional report, in which, after reciting
the making of their report, the fact of depositing a copy thereof
in the clerk's office and of giving said notice, they further report-
ed that the objections, papers and documents thereunto annexed,
and none others, had been presented to them against their said
assessment and estimate in the premises. That after the re-
ceipt thereof they reconsidered their estimate, &c. in the prem-
ises, and were of opinion that the same required correction, and
that they did accordingly correct the same by increasing the
said sum of $11,220 to $11,370. These reports, pursuant to
the notice, were presented to the supreme court for confirmation,
annexed to which were several affidavits showing the due pub-
lication of the notice, of the signing of the reports by the com-
missioners, the notice, the written objections of Peter Embury,
bearing date the 13th day of July, 1829, and several affidavits
showing the value of the premises taken by the commissioners,
and an affidavit of J. Slidell, one of the commissioners, made on
the 1st day of August, 1829, showing that when the commis-

sioners first met in reference to the matter of widening and improving Ann-street, Peter Embury appeared before them in behalf of the devisees of Daniel Aymar, and stated that as the house and lot was undivided among the heirs, it would be better for the commissioners to take the whole lot and not leave the gore of land remaining which would belong, in undivided shares, to said heirs; that the commissioners endeavored to persuade Mr. Embury to retain the gore, but that he persisted, and the commissioners finally concluded that under all the circumstances it was expedient to include and comprise the whole lot in the assessment.

Upon the presentation of these papers and after hearing counsel on both sides, the court confirmed the report of the commissioners.  The authority to do so is contained in §178, (2 *R. L.* 409,) and declares that such report when so confirmed by the said court shall be final and conclusive upon all persons and parties whatsoever.  Upon the confirmation being made, the papers on which the application was founded were filed, and became records of the court in that matter, and as such it was competent to read in evidence on the trial, certified copies of any and each of them.  The judge on the trial therefore erred, in refusing to permit the reading in evidence on the trial, Embury's objections presented to the commissioners, and the affidavit of Slidell.  I know of no principle that will shut out, as incompetent evidence on the trial, documents which were competent to be used and were used in the proceedings and on the application for confirmation before the supreme court, and were placed on the files and records of the court, as part of the proceedings, &c. in that matter.  All the necessary or proper documents and papers used in summary proceedings in a matter pending before a court of record, although not proceeding according to the course of the common law, in that particular matter, unless otherwise declared by law, are competent as evidence in an action where the validity of such proceedings is questioned, and they become material to sustain the adjudication in such matter.

These papers, if they had been admitted in evidence, would

have shown, satisfactorily, as I think, that Peter Embury at least consented and was desirous that the commissioners should take the premises in question under the authority conferred by § 179, believing that the interests of the owners would be thereby promoted; and if it be shown that he was authorized to represent Hannah Aymar, and David Jacot and Margaret his wife, before the commissioners in that matter, it seems to me that it would be enough to show their consent also; especially when connected with the fact that he, together with Hannah Aymar and David Jacot, subsequently received from the corporation the full amount of the estimated loss and damage, ($11,370,) knowing that it included the whole estimated loss and damage for both pieces of land, which the commissioners took. It is quite as clear a manifestation of the consent of the three to the taking the premises in question, by them, and an adoption of the statute machinery for effectuating the grant of that land, as the manifestation of the consent was held to be in *Baker* v. *Braman,* by bringing an action for the recovery of the damages assessed. These proceedings being taken with the consent of the owners and duly confirmed by the court, and the damages paid pursuant to the statute, operate as a conveyance of the land by the owner, and vest the title in the corporation. (*Arnot* v. *McClure,* 4 *Denio,* 45.)

Should it be objected that Margaret Jacot being a *feme covert* at the time, was legally incompetent to give consent; the answer is, the legislature had power to remove that disability, and that it has done so, if we read the statute as containing the *proviso* or condition upon which the commissioners might take such lands, that the owners consent, without making any exception. The evidence in this case was not sufficient to show that Mrs. Jacot ever gave her consent; there is nothing, in fact, beyond the assertion in the reports of the commissioners that the owners *relinquished,* &c. There is no evidence that she authorized Peter Embury to represent her before the commissioners, or that she ever received any portion of the money awarded as the loss and damage sustained by the owners, by the taking of the premises in question. She owned the fee of the one-fifth part

thereof subject to the life estate of David Jacot, her husband therein. It was as necessary to the transfer of her estate to the corporation, that she should have consented, as it was that her husband should consent to effect a transfer of his interest therein.

But the defendants have made another point. It is insisted that the proceedings for widening Ann-street by the corporation, and their confirmation, after discussion, by the judgment of the supreme court, are conclusive upon the plaintiffs, as an adjudication in respect to their title to the premises taken by the corporation under these proceedings, pursuant to the provisions of the statutes referred to, not having been reversed on *certiorari* or writ of error; and that they are estopped, by such proceedings and judgment, from claiming title to any portion of the said premises, upon the ground that the title to the premises has been adjudged to be in the corporation, the grantor of the defendants, by a court having jurisdiction to adjudicate in a proceeding between the corporation and the plaintiffs, in which the question as to which had or was entitled to the title to the premises, was directly put in issue and determined.

That the judgment or decree of a court possessing competent jurisdiction, is, as a general rule, final not only as to the subject matter thereby actually determined, but as to every other matter which the parties might litigate in the cause, and which they might have had decided, can admit of no doubt. (*Voorhees* v. *The Bank of the U. S.* 10 *Pet.* 449; *Le. Guen* v. *Gouverneur,* 1 *John. Cas.* 436; 2 ed. note A, *p.* 492; 2 *Smith's L. Cas. tit. Estoppel, p.* 455, *note; Outram* v. *Morewood,* 3 *East,* 346; *Etheridge* v. *Osborn,* 12 *Wend.* 399; *Duchess of Kingston's case,* 11 *S. T.* 261; 1 *Phil. Ev.* 223.)

The general rule is, that an allegation on record, upon which issue has been once taken and found, and a judgment has been rendered, is, between the parties taking it and their privies, conclusive, according to the finding thereof, so as to estop the parties respectively from again litigating that fact once so tried and found; whether it is plead in bar, or given in evidence; when it is proper to be given in evidence. (2 *Cowen & Hill's Notes to Phil. Ev.* 804 *to* 810, 971; *Gardner* v. *Buckbee,* 3 *Cowen,*

120; *Burt* v. *Sternbergh*, 4 *id.* 559; *Wood* v. *Jackson*, 8 *Wend.* 1; *Young* v. *Black*, 7 *Cranch*, 565; *Wright* v. *Butler*, 6 *Wend.* 284; *Lawrence* v. *Hunt*, 10 *id.* 80; *Eastman* v. *Cooper*, 15 *Pick.* 276.)

That the supreme court under the provisions of the New-York street law exercises its powers as a *court* and not as commissioners appointed by the legislature, and that its decisions in such matters are judgments of that court, and as such, subject to review in the appellate court, must be regarded as settled. (*Striker* v. *Kelly*, 7 *Hill*, 9; *S. C. in error*, 2 *Denio*, 323.) But as its powers in such matters are wholly derived from the statutes, and do not belong to it, as a court of general jurisdiction, and its decisions, must be treated like those of a court of special and limited jurisdiction.. (2 *Cowen & Hill's Notes*, 946.)

It is, however, of no consequence, in determining the question under consideration, to decide whether the supreme court, in such cases, is to be regarded as acting as a court of general or of limited jurisdiction. For a judgment, whether rendered by a court possessing one or the other jurisdiction, if acting within the scope of its lawful authority, duly observing all the prescribed modes of proceeding, is equally conclusive, not only against future litigation of the same matters, but in all other respects.

To determine the question involved by this point, it becomes necessary to see what matters are referred to the supreme court, in street cases under the laws, for its adjudication, and what are the issues between the parties, because, ordinarily, the parties or their privies are only concluded by a judgment of a court upon such matters as are in issue between them in the cause or proceeding referred to it for determination, and such as they might litigate in the cause and might have had decided.

Under these statutes, there is nothing submitted to the supreme court for its consideration, but the appointment of the commissioners and the confirmation of their report, when presented. This involves only the question of the fitness of the persons named for the appointment as commissioners, and the

regularity of the proceedings of the corporation and commission-
ers, and the justness of the estimate and assessment, made and
reported by the commissioners.   The question whether the stat-
ute (the proceedings being regular and a proper estimate and
assessment having been made, reported, and a rule or order en-
tered of confirmation by the court) has the legal effect to trans-
fer to the corporation, the legal title of the owner of the lands
proposed to be taken for the purpose of opening, &c. or laying
out, &c. or as a residue, &c. under sections 178 and 179, is not
made, and can not, from the nature of the case as presented for
the consideration of the court, be determined.   The corporation
when it takes these proceedings assumes, that when com-
pleted, the title of the owner of the lands will be thereby trans-
ferred from the owner and become vested in the corporation ;
but if questioned by the owner, it remains, as it seems to me, to
be made whenever the corporation or its grantee undertake to
assert a right of possession to the premises so taken.   Although
the statute declares that "such report when so confirmed by the
said court shall be final and conclusive, as well upon the mayor,
aldermen and commonalty of the city of New-York, as upon
the owners, lessees, persons and parties interested in and entitled
unto the lands, tenements, hereditaments and premises men-
tioned in the said report ; and also upon all other persons whom-
soever ; and on such final confirmation of such report by the
said court, the said mayor, aldermen and commonalty of the
city of New-York shall become and be seised in fee of all the
said lands, tenements, hereditaments and premises in the said
report mentioned, that shall or may be so required, for the pur-
pose of opening," &c. "and (as in § 179) all the said part and res-
idue of the said lot or lots, &c. so included in the said estimate
and assessment, and not required for the purpose of making
such said operation and improvement, shall on confirmation by the
said court of the said report of the commissioners, or such fur-
ther report as may be made in the premises, become and be
vested in the said mayor, aldermen and commonalty of the city
of New-York and their successors, in fee simple ;" yet it seems
to me, that if the corporation, in the one case, becomes seised,

and in the other becomes vested, in fee simple of the lands mentioned, it is by force of the statute, (its provisions being complied with,) and not by the confirmation of the report of the commissioners, by the court, as an adjudication, upon that question. The whole proceeding is but a mode adopted by the state to exercise its right of eminent domain, though a power confided to the corporation of the city of New-York or its officers. The confirmation of the proceedings taken under the statute, in no sense can be deemed an adjudication upon the *effect* of these proceedings. The order of confirmation has the effect merely to conclude the parties in respect to the regularity of the proceedings taken preliminarily, in order to transfer the title of the owner of the lands proposed to be taken, to the corporation, and does not, as I have before remarked, conclude either party in respect to the question as to the *effect*. Whether the statute which provides for divesting the title of the owners of the premises in question, and transferring it to the corporation, is or not, constitutional and valid, has not been, and could not properly have been determined by the court, so as to estop the owners from making the question in the action brought for the recovery of the possession of them.

The judgment of the superior court should be reversed, and a new trial had, costs to abide the event.

Ordered accordingly.