SKIDMORE v. FAHYS WATCH-CASE CO. et al. (two cases).

(Supreme Court, Appellate Division, First Department. April 7, 1898.)

1. PATENTS—RIGHTS OF LICENSEE—ROYALTIES.
   All that can be claimed by a licensee under a patent is the legal right to manufacture, and the further right to restrain unlawful manufactures by infringers. If he has these, he cannot escape liability for agreed royalties because of the fact that the patented article is unlawfully made by others.

2. SAME—RENUNCIATION BY LICENSEE.
   The licensee of a right to use a patented invention, while he remains such, cannot renounce the license, on the ground that it is invalid, and relieve himself of the liability to pay royalties while he manufactures the articles, until he has given a clear, definite, and unequivocal notice that he renounces the protection of his license, and stands admittedly as an infringer if the patent is valid.

3. SAME—LIABILITY FOR ROYALTY.
   The plaintiff, by contracts executed in 1884 and 1886, gave to defendant an exclusive license to manufacture dust-proof watch cases under a patent to Skidmore, upon specified royalties, and agreed to confer the same privilege, on

the same terms, under future patents; the cases to be made according to samples approved by plaintiff. Samples were thus approved, and accepted by defendant, who continued throughout to manufacture in accordance therewith. In an action to recover royalties for 1893 and 1894, defendant alleged failure of consideration, and that the defendant had and claimed no monopoly during these years. It appeared that there had been alleged infringements by third parties, and, prior to 1893, plaintiff, learning of adverse claims under a certain Fitch patent, procured a license under it, for defendant's benefit, and that, during the years in question, defendant, acting thereunder, marked the goods made and sold by it as made under the Fitch patent. *Held* that, even assuming that defendant did not have the exclusive right and undisturbed enjoyment, it was still liable for royalties on such goods.

Appeal from judgment on report of referee.

Actions by Horace G. Skidmore against the Fahys Watch-Case Company and C. Wesley Harmon. From a judgment entered on the report of a referee, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and PATTERSON, JJ.

James L. Bishop, for appellant.
Edmund Wetmore, for respondents.

RUMSEY, J. These actions are brought to recover royalties which the plaintiff claims have become due to him and the defendant Harmon from the Fahys Watch-Case Company by reason of the manufacture of certain watch cases patented by Skidmore & Harmon, and manufactured by the Fahys Watch-Case Company under contracts from them. There were two contracts,—one made on the 5th of April, 1884, and the other on the 21st of October, 1886. By the terms of the first contract, Skidmore & Harmon, the parties of the first part, agreed to give, and did give, to the Fahys Watch-Case Company, party of the second part, the exclusive and sole right to make and manufacture silver watch cases under letters patent of the United States granted to the parties of the first part on the 19th of February, 1884, and numbered 293,869, and the party of the second part agreed to make the said cases as fast as the market might require. The contract provided for the payment of a certain royalty by the party of the second part to Skidmore & Harmon, with a change in the amount of the royalty in certain circumstances. It also fixed the price at which the watch cases would be put upon the market to wholesale dealers. It then contained a provision, substantially, that if, by reason of competition or other causes, it became necessary to reduce the price, the party of the first part would reduce it until their profits, or the sum to be paid to them, did not exceed 20 cents on each case. It contained further provisions looking towards the necessity of reducing the price of the goods. The contract further provided that the parties of the first part agreed to give to the parties of the second part all pending applications and future patents on dust-proof watch cases, under the same conditions, and with the same privileges, as were given in the contract. The party of the second part further agreed to make all the cases in a good and workmanlike manner, and according to samples furnished and approved by Skidmore. The contract sued upon in the second of these actions was substantially the same,

except that it provided for the making of gold and gold-filled watch cases, instead of silver, and reserved the right to Skidmore & Harmon to license three other corporations named in that contract to make the same cases. In other respects the contract was substantially like the first one, and the same questions arise in the one action as in the other. The actions were brought for royalties accruing in 1893 and 1894. The defense in each action was, substantially, that the patent was invalid and void; that there was a total failure of consideration, under the contract; and that the defendant the Fahys Watch-Case Company had and claimed no monopoly and benefit under the contract during the years 1893 and 1894. A supplemental answer was interposed, setting up the determination of the United States circuit court in the Southern district in New York that the patent claimed by Skidmore & Harmon was invalid. This judgment was entered in 1896, and after the commencement of these actions. It is alleged in the complaint, and admitted by the answers, that Harmon was made a defendant because he declined to be joined as plaintiff. He interposed no defense to the action, and in the further progress of this opinion no attention will be paid to his presence, but, whenever the word "defendant" is used, it will be understood to refer to the Fahys Watch-Case Company, which is the real defendant in the action. The learned referee who determined both actions found as a matter of fact that in the years 1893 and 1894 the Fahys Watch-Case Company did not have the undisturbed enjoyment of the privileges intended to be granted to it by said contract, and had no exclusive right or monopoly, and did not enjoy any exclusive monopoly, in the sale of the said cases referred to in the contract. The correctness of this finding is attacked by the plaintiff, and that will be the first question examined.

It appeared that disputes had arisen between Skidmore and the defendant in regard to royalties which were claimed to be due under these contracts in 1891, and Skidmore brought an action on each contract to recover the royalties due in that year, and other actions to recover royalties due in 1892. These actions were tried, and judgments rendered in favor of the plaintiff in all of them. The judgment rolls in these actions were put in evidence. As the actions were brought upon the same contracts as the actions now before us, those judgments, so far as they construe the contracts, are final determinations of the rights of the parties, not only as to matters which were put in issue therein, but as to every other matter which might have been litigated in them. Embury v. Conner, 3 N. Y. 511; Cromwell v. Sac Co., 94 U. S. 351. It appeared in those cases that, after the making of the contracts upon which those actions were brought, the plaintiff prepared models or samples of the cases to be made under the contract, as it was provided that he should do, and various changes were made in those samples, until finally a structure was produced which was approved by the plaintiff as the proper form of construction of a watch case under the agreement, and was accepted by the defendant. It appears in the present actions that the sample thus made and accepted by all parties is the model of those manufactured in 1893 and in 1894, and upon which royalties are claimed. It further

appeared in the former actions that, at about the time of the execution
of the contract upon which the suits were brought, one Fitch asserted
that the watch case made according to the sample was an infringe-
ment upon an invention previously patented by him, and thereupon,
for the purpose of securing to the defendant the undisputed right to
make and sell the watch cases mentioned in the agreement, as changed
by the sample, Skidmore & Harmon, with the knowledge and approval
of the Fahys Watch-Case Company, procured from Fitch the right to
use his patented invention, and agreed to pay him a royalty therefor.
These facts are not disputed in the present actions.    As has been
said, it appears, and is found by the referee, that the watch cases
manufactured under each of these contracts in 1893 and 1894 were
made like the samples agreed upon between the patentees and the
defendant as the ones to be made under their contracts of April, 1884,
and October, 1886.    These cases were not stamped as made under
the Skidmore & Harmon patent.    They were, however, stamped as
made under the Fitch patent, and this stands as a conceded fact in the
case.    We have, therefore, these facts, which are not disputed:    That
during the years 1893 and 1894 the defendant manufactured watch
cases of the precise form which had been agreed upon between it and
Skidmore as the ones which might be manufactured under its contract
with him; that Fitch had letters patent for dust-proof watch cases,
which he claimed were infringed by the sample so agreed upon; that
Skidmore & Harmon, in order to protect the defendant in the manu-
facture of the sample watch cases, procured from Fitch the right to
manufacture under his patent, and paid him a royalty therefor; that
the defendant continued in 1893 and 1894 to manufacture these cases,
and, although it is found by the referee that it asserted the right to
manufacture them without regard to the contract between Skidmore
& Harmon and itself, yet that the cases it manufactured were prac-
tically like the sample cases, and they were stamped as manufactured
under the Fitch patent, the right to use which was acquired only from
Skidmore & Harmon, and as a means of protecting the defendant in
the making and sale of these sample cases.    The defendant produced
as a witness one of its salesmen, named Sherry, who testified that in
the year 1892, and from that time on, the firm of H. Muir's Sons, of
Philadelphia, manufactured and put upon the market screw watch
cases very much resembling the ones made and sold by the defendant;
that he met these cases upon the market wherever he went; and that,
as the result, the defendant was forced in July, 1893, to reduce
the price of their cases to meet the competition of Muir's Sons.    He
testified further that this manufacture by Muir's Sons continued until
after 1894.    It appeared that, as soon as this was brought to the
attention of the defendant, it caused notices to be published to the
effect that they had sued Muir's Sons for the infringement of their
patent; that all screw watch cases were covered by their patent,
and all persons dealing in any cases not made on their authority would
be held responsible as infringers.    There is evidence from which it
can be inferred that the sale of watch cases by the defendant during
the years 1893 and 1894 were smaller than the sales of the correspond-
ing kinds of cases in 1892; but whether that falling off in sales was

caused by the competition of H. Muir's Sons, or by the general depression in business, which it is well known began early in 1893, was not made to appear. It was upon these facts that the referee held that the Fahys Watch-Case Company during these years did not have the undisturbed enjoyment of the privileges intended to be granted to it by the contracts. In our opinion, the evidence does not warrant that conclusion. The plaintiff undertook to give to the defendant the exclusive right to manufacture such sample watch cases as should be agreed upon between the parties. It does not seem to be disputed that this sample was somewhat different from the watch case covered by the letters patent to Skidmore & Harmon, and that it was an infringement, or claimed to be an infringement, upon the Fitch patent. By reason of that claim, Skidmore & Harmon acquired for the defendant the right to manufacture under the Fitch patent. This was done with the defendant's approval, and their act was adopted by it. If it acquired from Skidmore & Harmon the right to manufacture under the Fitch patent which they had, it occupied with reference to them, so far as that patent was concerned, the precise situation which it would have occupied had the articles manufactured been within their patent. The Fitch patent, so far as appears in this case, is undoubtedly a valid one; and any licensee who had acquired the right to manufacture watch cases under that patent would undoubtedly have been protected to the same extent as though he had manufactured under the Skidmore patent, had that been valid. The grant of the exclusive right to manufacture under a patent is not violated because the patented article is unlawfully made by an infringer. All that can be expected by one who obtains a license from a patentee is the legal right to manufacture, and the further right to restrain unlawful manufactures by persons who infringe the patent. This right the defendant undoubtedly obtained from Skidmore, as to the Fitch patent. If the sample watch case which was accepted by the parties as the one to be made under their contract was covered by the Fitch patent, as it was claimed to be when the defendant stamped it as made under that patent, its right to make it was undoubtedly protected by the agreement which Skidmore & Harmon had made with Fitch for its benefit. There is no claim in this case that this right was not acquired by it. It is quite true that Muir's Sons infringed its right, as it claimed; but the fact of an unlawful infringement does not take away the consideration for the contract, if the licensors controlled the exclusive right to manufacture, and there is no evidence here that they did not, either by their own patent, or by the Fitch patent, which they acquired. So it appears that, as the result of the transactions between the parties, the defendant acquired from Skidmore & Harmon, as against them, the exclusive right to make the watch cases described in their patent, and the sample watch cases as well, and it also acquired from them the right to manufacture the sample watch cases under the Fitch patent which they had acquired for the benefit of the Fahys Watch-Case Company; and this patent, it is conceded, was the one under which it was represented by them, by stamping the cases, that they were manufactured. In view of these undisputed facts, we think the referee erred in holding that they

had not in 1893 the exclusive right to manufacture these cases. The fact that other cases resembling these were put upon the market, in competition with those made by the defendant, did not necessarily establish that they were an infringement of the patent under which the defendant claimed to make. It appears in the case that there are numerous patents for dust-proof watch cases, some of them resembling not distantly those made by the defendant. It does not follow necessarily that they are infringements. A reading of the contract shows that it was evidently within the minds of the parties that other watch cases might be put upon the market which entered into competition with those made by them to such an extent as to make it necessary to reduce the price; and provision was made for that condition of affairs in the contract, as has been stated. If the defendant was not, as a matter of fact, deprived of the exclusive right or monopoly which was given to it by the contracts with Skidmore & Harmon, then clearly the case came precisely within the case of Marston v. Swett, 66 N. Y. 206, 82 N. Y. 526, and within the rule laid down by those cases they are liable for these royalties.

But, if the referee had been correct in his finding that the Fahys Watch-Case Company did not have the exclusive right and the undisturbed enjoyment of the privileges intended to be granted, yet, upon the facts appearing in this case, it was nevertheless liable, to some extent, at least, for royalties upon the watch cases which it made in 1893 and 1894 under each of these contracts. The facts have been so fully stated which establish this proposition that it is only necessary to recapitulate them shortly. They are these: The structure accepted as the one to be made under the contracts was the sample structure presented by Skidmore after the contracts had been executed. Skidmore acquired the Fitch patent for the express purpose of protecting the defendant in the manufacture of that sample. The defendant manufactured that sample during 1893 and 1894, under the express protection of the Fitch patent. During those two years Skidmore & Harmon relinquished to the defendant the exclusive right to manufacture these articles which they had granted to it by their contracts, and they did not attempt to assert the right to manufacture, but permitted the defendant to obtain the benefit of its contract, so far as they were concerned. Indeed, they could not do otherwise. The contract bound them to give to the defendant the exclusive right to manufacture these cases, and, so long as that contract continued in force, they were not at liberty to assume the manufacture themselves, or to authorize anybody else to do it, no matter whether it was protected by a valid patent or not. So the defendant, having from Skidmore & Harmon an exclusive right to make these watch cases according to these samples, and also having acquired from them a license to use the Fitch patent, and thereby protect itself from any infringement of that patent, exercised those rights, and manufactured and sold those cases. The only right it had to stamp these cases as made under the Fitch patent was that which it acquired through Harmon & Skidmore. The case therefore clearly comes within the rule that the licensee of a right to use a patented invention, while it remains such, cannot renounce the license, and relieve himself of the liability

to pay royalties while he manufactures the articles, until he has given a clear, definite, and unequivocal notice that he renounces the protection of his license, and stands admittedly as an infringer if the patent is a valid one.    Skinner v. Machine Co., 140 N. Y. 217, 35 N. E. 491. This, it is clear, the defendant did not do.    It is found by the referee that the defendant before 1893 asserted its right to make the watch cases without liability to pay royalty therefor, but it is not found that any express notice was given to Skidmore of its intention to act upon that right; and the courts are unanimous in holding that the licensee cannot escape the liability to pay royalties until he has clearly and unequivocally renounced the license.    The patent of Skidmore was not declared invalid until 1896, long after the right to these royalties had accrued; and during the years 1893 and 1894, while that patent was yet apparently valid, the defendant was in a position, if it had been sued by Skidmore for an infringement of either that or the Fitch patent, to insist upon its rights under the contract to make the articles, both under the Fitch patent, and under the agreement by which the samples were accepted as the articles which it had the exclusive right to make.    If it intended to escape the liability for royalties, it had no right to permit itself to remain in a position where that contract would be available to it as a defense, and yet it clearly was in that position.

The learned referee held that the case of Skinner v. Machine Co. did not apply, because the defendant did not stamp the watch cases manufactured in 1893 and 1894 under the Skidmore patent, and did not make any claim of the privileges conferred or attempted to be conferred upon it by Skidmore's contract.    But in that conclusion he entirely overlooks the fact that it did stamp the articles under the Fitch patent, which it acquired from Skidmore, and which it would have no right whatever to use except so far as Skidmore had bestowed it, and thus it did in fact make use of the privileges which it acquired as the necessary result of the contract with Skidmore.    It must not be forgotten that the claim here is based upon an entire failure of consideration, and the defendant cannot succeed unless it established that claim.    It is not sufficient that it should show that it was interrupted in its exercise of the right, or that by competition it was forced to reduce the price of its articles.    If it appears that it made any use of the privileges which it acquired from Skidmore, and received any benefit from those privileges, in the manufacture of these articles during 1893 and 1894, there clearly was not an entire failure of consideration, and the defendant is bound to pay royalties.    If, for any reason growing out of the contract, the amount of royalties which it should pay is to be diminished, or it suffered any damages because of a breach on Skidmore's part of a portion of his contract, yet as it confessedly took the benefit of the contract, to a certain extent, by the use of the Fitch patent, and of the protection which that patent gave it, it had not repudiated the contract, and it is bound to pay royalties.    Warwick v. Stockton (N. J. Ch.) 37 Atl. 458.    And any remedy which it seeks by reason of a breach of the contract on the part of Skidmore must be obtained, either by an action to that effect, or by a counterclaim in these actions.

The result of our examination of the cases is that the judgment of the learned referee was erroneous, and must be reversed, and a new trial ordered before another referee, with costs to the appellant, to abide the event of the action.   All concur.