HORACE G. SKIDMORE, Appellant, *v.* FAHYS. WATCH CASE COMPANY, Respondent, Impleaded with C. WESLEY HARMAN. (Nos. 6 and 7.)

*Royalties under a patent — an exclusive right to manufacture is not defeated by proof of competition and infringements — a licensee is liable until it definitely renounces the right to use the patent — a judgment for the royalties for some years is res adjudicata as to such right in subsequent ones.*

The owners of a patent for making watch cases contracted with a watch manufacturing company to give it the exclusive right to make, under such patent, silver and gold watch cases, to be manufactured according to samples furnished by one of the patentees named Skidmore. A price to wholesale dealers was fixed by the contract, but a reduction in price was contemplated in case of competition. It appeared from the judgment rolls in actions brought by Skidmore against the company, to recover the royalties due in 1891 and 1892, in which he recovered royalties under this contract, that Skidmore prepared models or samples which were approved, accepted and used by the company, and further that Skidmore and the other patentee obtained from a person named Fitch, who claimed that their patent was an infringement upon his, a right to use his patent, which it appeared was a valid one.

In an action brought by Skidmore to recover the royalties for 1893 and 1894 it appeared that the company had manufactured in those years, under the protection of the original patent and that of Fitch, watch cases from Skidmore's model, but had stamped them only with the name of Fitch as patentee; that watch cases very much resembling those made by the company under this contract had been put upon the market, and that the sales by the company had fallen off, although it was not shown that this sale by other parties had caused it. The watch company had before 1893 asserted its right to make cases without paying a royalty to Skidmore, but had not given him notice of its intention to act upon such a right. In 1896, and after the present action was begun, Skidmore's patent was adjudged to be invalid. A referee, to whom the action was referred, dismissed the complaint, sustaining the defense thereto of a failure of consideration.

*Held,* that the company had, in 1893 and 1894, an exclusive right to manufacture the watch cases under the valid patent of Fitch, and that, especially in view of the provisions of the contract contemplating a possible reduction in price in case of competition, proof that other similar watch cases were put upon the market in competition with those of the company, and that a decrease had taken place in the sale price, did not justify a finding that the company had not enjoyed such an exclusive right.

*Semble,* that this would be so even were it shown that such similar watch cases were an infringement of the Fitch patent.

That as the company had manufactured watch cases in 1893 and 1894 under the protection of the Skidmore patents and that of Fitch from samples furnished by Skidmore, and had stamped them with Fitch's name, and as the patentees

had during that period relinquished their right to manufacture, and as the company had never unequivocally renounced the protection of the license thus obtained, it was liable for the royalties for those years;

That the judgment rolls, in the actions brought by Skidmore in 1891 and 1892 against the company upon the same contract were, so far as they construed the contract, final determinations as to the rights of the parties.

APPEAL by the plaintiff, Horace G. Skidmore, from judgments of the Supreme Court in favor of the defendant, the Fahys Watch Case Company, entered in the office of the clerk of the county of New York on the 22d day of June, 1897, upon the reports of a referee directing in each case the dismissal of the complaint.

*James L. Bishop,* for the appellant.

*Edmund Wetmore,* for the respondent.

RUMSEY, J.:

These actions are brought to recover royalties which the plaintiff claims have become due to him and the defendant Harman from the Fahys Watch Case Company by reason of the manufacture of certain watch cases patented by Skidmore & Harman and manufactured by the Fahys Watch Case Company under contracts from them. There were two contracts, one made on the 5th of April, 1884, and the other on the 21st of October, 1886.

By the terms of the first contract Skidmore & Harman, the parties of the first part, agreed to give, and did give, to the Fahys Watch Case Company, party of the second part, the exclusive and sole right to make and manufacture silver watch cases under letters patent of the United States, granted to the parties of the first part on the 19th of February, 1884, and numbered 293869, and the party of the second part agreed to make the said cases as fast as the market might require. The contract provided for the payment of a certain royalty by the party of the second part to Skidmore & Harman, with a change in the amount of the royalty in certain circumstances. It also fixed the price at which the watch cases would be put upon the market to wholesale dealers. It then contained a provision substantially that if, by reason of competition or other causes, it became necessary to reduce the price the party of the first part would reduce it until their profits, or the sum to be paid to them, did not

exceed twenty cents on each case. It contained further provisions looking towards the necessity of reducing the price of the goods. The contract further provided that the parties of the first part agreed to give to the parties of the second part all pending applications and future patents on dust-proof watch cases under the same conditions and with the same privileges as were given in the contract. The party of the second part further agreed to make all the cases in a good and workmanlike manner and according to samples furnished and approved by Skidmore.

The contract sued upon in the second of these actions was substantially the same, except that it provided for the making of gold and gold-filled watch cases instead of silver, and reserved the right to Skidmore & Harman to license three other corporations named in that contract to make the same cases. In other respects the contract was substantially like the first one, and the same questions arise in the one action as in the other.

The actions were brought for royalties accruing in 1893 and 1894. The defense in each action was substantially that the patent was invalid and void; that there was a total failure of consideration under the contract, and that the defendant, the Fahys Watch Case Company, had and claimed no monopoly and benefit under the contract during the years 1893 and 1894. A supplemental answer was interposed setting up the determination of the United States Circuit Court, in the southern district of New York, that the patent claimed by Skidmore & Harman was invalid. This judgment was entered in 1896 and after the commencement of these actions. It is alleged in the complaint and admitted by the answers that Harman was made a defendant because he declined to be joined as plaintiff. He interposed no defense to the action, and in the further progress of this opinion no attention will be paid to his presence, but whenever the word defendant is used it will be understood to refer to the Fahys Watch Case Company, which is the real defendant in the action. The learned referee who determined both actions found, as a matter of fact, that in the years 1893 and 1894 the Fahys Watch Case Company did not have the undisturbed enjoyment of the privileges intended to be granted to it by said contract, and had no exclusive right or monopoly, and did not enjoy any exclusive monopoly, in the sale of the said cases referred to in the contract.

The correctness of this finding is attacked by the plaintiff and that will be the first question examined.

It appeared that disputes had arisen between Skidmore and the defendant in regard to royalties which were claimed to be due under these contracts in 1891, and Skidmore brought an action on each contract to recover the royalties due in that year, and other actions to recover royalties due in 1892. These actions were tried and judgments rendered in favor of the plaintiff in all of them. The judgment rolls in these actions were put in evidence. As the actions were brought upon the same contracts as the actions now before us, those judgments, so far as they construe the contracts, are final determinations of the rights of the parties, not only as to matters which were put in issue therein, but as to every other matter which might have been litigated in them. (*Embury* v. *Conner*, 3 N. Y. 511; *Cromwell* v. *County of Sac*, 94 U. S. 351.) It appeared in those cases that after the making of the contracts upon which those actions were brought the plaintiff prepared models or samples of the cases to be made under the contract as it was provided that he should do, and various changes were made in those samples until finally a structure was produced which was approved by the plaintiff as the proper form of construction of a watch case under the agreement and was accepted by the defendant. It appears in the present actions that the sample thus made and accepted by all parties is the model of those manufactured in 1893 and in 1894, and upon which royalties are claimed. It further appeared in the former actions that at about the time of the execution of the contract upon which the suits were brought one Fitch asserted that the watch case made according to the sample was an infringement upon an invention previously patented by him, and thereupon, for the purpose of securing to the defendant the undisputed right to make and sell the watch cases mentioned in the agreement as changed by the sample, Skidmore & Harman, with the knowledge and approval of the Fahys Watch Case Company, procured from Fitch the right to use his patented invention and agreed to pay him a royalty therefor. These facts are not disputed in the present actions.

As has been said, it appears and is found by the referee that the watch cases manufactured under each of these contracts in 1893 and

1894 were made like the samples agreed upon between the patentees and the defendant as the ones to be made under their contracts of April, 1884, and October, 1886. These cases were not stamped as made under the Skidmore & Harman patent. They were, however, stamped as made under the Fitch patent, and this stands as a conceded fact in the case. We have, therefore, these facts, which are not disputed : That during the years 1893 and 1894 the defendant manufactured watch cases of the precise form which had been agreed upon between it and Skidmore as the ones which might be manufactured under its contract with him ; that Fitch had letters patent for dust-proof watch cases which he claimed were infringed by the sample so agreed upon ; that Skidmore & Harman, in order to protect the defendant in the manufacture of the sample watch cases, procured from Fitch the right to manufacture under his patent and paid him a royalty therefor ; that the defendant continued in 1893 and 1894 to manufacture these cases, and, although it is found by the referee that it asserted the right to manufacture them without regard to the contract between Skidmore & Harman and itself, yet that the cases it manufactured were practically like the sample cases, and they were stamped as manufactured under the Fitch patent, the right to use which was acquired only from Skidmore & Harman and as a means of protecting the defendant in the making and sale of these sample cases. The defendant produced as a witness one of its salesmen named Sherry, who testified that in the year 1892, and from that time on, the firm of H. Muir's Sons, of Philadelphia, manufactured and put upon the market screw watch cases, very much resembling the ones made and sold by the defendant ; that he met these cases upon the market wherever he went, and that as the result the defendants were forced, in July, 1893, to reduce the price of their cases to meet the competition of Muir's Sons. He testified further that this manufacture by Muir's Sons continued until after 1894. It appeared that as soon as this was brought to the attention of the defendant it caused notices to be published to the effect that they had sued Muir's Sons for the infringement of their patent ; that all screw watch cases were covered by their patent, and all persons dealing in any cases not made on their authority would be held responsible as infringers. There is evidence from which it can be inferred that the sale of watch cases by the defendants during

the years 1893 and 1894 was smaller than the sales of the corresponding kinds of cases in 1892; but whether that falling off in sales was caused by the competition of H. Muir's Sons, or by the general depression in business, which it is well known began early in 1893, was not made to appear. It was upon these facts that the referee held that the Fahys Watch Case Company during these years did not have the undisturbed enjoyment of the privileges intended to be granted to it by the contracts. In our opinion the evidence does not warrant that conclusion. The plaintiff undertook to give to the defendant the exclusive right to manufacture such sample watch cases as should be agreed upon between the parties. It does not seem to be disputed that this sample was somewhat different from the watch case covered by the letters patent to Skidmore & Harman, and that it was an infringement, or was claimed to be an infringement, upon the Fitch patent. By reason of that claim Skidmore & Harman acquired for the defendant the right to manufacture under the Fitch patent. This was done with the defendant's approval, and their act was adopted by it. If it acquired from Skidmore & Harman the right to manufacture under the Fitch patent which they had, it occupied, with reference to them, so far as that patent was concerned, the precise situation which it would have occupied had the articles manufactured been within their patent. The Fitch patent, so far as appears in this case, is undoubtedly a valid one, and any licensee who had acquired the right to manufacture watch cases under that patent would undoubtedly have been protected to the same extent as though he had manufactured under the Skidmore patent, had that been valid. The grant of the exclusive right to manufacture under a patent is not violated because the patented article is unlawfully made by an infringer. All that can be expected by one who obtains a license from a patentee is the legal right to manufacture and the further right to restrain unlawful manufactures by persons who infringe the patent. This right the defendant undoubtedly obtained from Skidmore as to the Fitch patent. If the sample watch case which was accepted by the parties as the one to be made under their contract was covered by the Fitch patent, as it was claimed to be when the defendant stamped it as made under that patent, its right to make it was undoubtedly protected by the agreement which Skidmore & Harman had made with

Fitch for its benefit.    There is no claim in this case that this right was not acquired by it.    It is quite true that Muir's Sons infringed its right as it claimed, but the fact of an unlawful infringement does not take away the consideration for the contract if the licensors controlled the exclusive right to manufacture, and there is no evidence here that they did not, either by their own patent or by the Fitch patent, which they acquired.    So it appears that as the result of the transactions between the parties, the defendant acquired from Skidmore & Harman, as against them, the exclusive right to make the watch cases described in their patent, and the sample watch cases as well, and it also acquired from them the right to manufacture the sample watch cases under the Fitch patent, which they had acquired for the benefit of the Fahys Watch Case Company, and this patent it is conceded was the one under which it was represented by them, by stamping the cases, that they were manufactured.    In view of these undisputed facts, we think the referee erred in holding that they had not, in 1893, the exclusive right to manufacture these cases.    The fact that other cases resembling these were put upon the market in competition with those made by the defendant, did not necessarily establish that they were an infringement of the patent under which the defendant claimed to make.    It appears in the case that there are numerous patents for dust-proof watch cases, some of them resembling, not distantly, those made by the defendant.    It does not follow, necessarily, that they are infringements.    A reading of the contract shows that it was evidently within the minds of the parties that other watch cases might be put upon the market, which entered into competition with those made by them, to such an extent as to make it necessary to reduce the price, and provision was made for that condition of affairs in the contract, as has been stated.    If the defendant was not, as a matter of fact, deprived of the exclusive right or monopoly which was given to it by the contracts with Skidmore & Harman, then, clearly, the case came precisely within the case of *Marston* v. *Swett* (66 N. Y. 206 ; S. C., 82 id. 526), and within the rule laid down by those cases it is liable for these royalties.

But if the referee had been correct in his finding that the Fahys Watch Case Company did not have the exclusive right and the undisturbed enjoyment of the privileges intended to be granted, yet

upon the facts appearing in this case it was, nevertheless, liable to some extent, at least, for royalties upon the watch cases which it made in 1893 and 1894 under each of these contracts. The facts have been so fully stated which establish this proposition that it is only necessary to recapitulate them shortly. They are these : The structure accepted as the one to be made under the contracts was the sample structure presented by Skidmore after the contracts had been executed. Skidmore acquired the Fitch patent for the express purpose of protecting the defendant in the manufacture of that sample. The defendant manufactured that sample during 1893 and 1894 under the express protection of the Fitch patent. During those two years Skidmore & Harman relinquished to the defendant the exclusive right to manufacture these articles which they had granted to it by their contracts, and they did not attempt to assert the right to manufacture, but permitted the defendant to obtain the benefit of its contract so far as they were concerned. Indeed, they could not do otherwise. The contract bound them to give to the defendant the exclusive right to manufacture these cases, and so long as that contract continued in force, they were not at liberty to assume the manufacture themselves or to authorize anybody else to do it, no matter whether it was protected by a valid patent or not. So the defendant, having from Skidmore & Harman an exclusive right to make these watch cases according to these samples, and also having acquired from them a license to use the Fitch patent and thereby protected itself from any infringement of that patent, exercised those rights and manufactured and sold those cases. The only right it had to stamp these cases, as made under the Fitch patent, was that which it acquired through Skidmore & Harman. The case, therefore, clearly comes within the rule that the licensee of a right to use a patented invention while it remains such, cannot renounce the license and relieve himself of the liability to pay royalties while he manufactures the articles until he has given a clear, definite and unequivocal notice that he renounces the protection of his license and stands admittedly as an infringer, if the patent is a valid one. (*Skinner* v. *W. M. & R. M. Co.*, 140 N. Y. 217.) This, it is clear, the defendant did not do. It is found by the referee that the defendant before 1893 asserted its right to make the watch cases

without liability to pay royalty therefor, but it is not found that any express notice was given to Skidmore of its intention to act upon that right, and the courts are unanimous in holding that the licensee cannot escape the liability to pay royalties until he has clearly and unequivocally renounced the license. The patent of Skidmore was not declared invalid until 1896, long after the right to these royalties had accrued, and during the years 1893 and 1894 while that patent was yet apparently valid, the defendant was in a position if it had been sued by Skidmore for an infringement of either that or the Fitch patent, to insist upon its rights under the contract to make the articles both under the Fitch patent and under the agreement by which the samples were accepted as the articles which it had the exclusive right to make. If it intended to escape the liability for royalties, it had no right to permit itself to remain in a position where that contract would be available to it as a defense, and yet it clearly was in that position.

The learned referee held that the case of *Skinner* v. *W. M. & R. M. Co.* did not apply because the defendant did not stamp the watch cases manufactured in 1893 and 1894 under the Skidmore patent, and did not make any claim to the privileges conferred or attempted to be conferred upon it by Skidmore's contract. But in that conclusion he entirely overlooks the fact that it did stamp the articles under the Fitch patent which it acquired from Skidmore and which it would have no right whatever to use except so far as Skidmore had bestowed it, and thus it did in fact make use of the privileges which it acquired as the necessary result of the contract with Skidmore. It must not be forgotten that the claim here is based upon an entire failure of consideration, and the defendant cannot succeed unless it established that claim. It is not sufficient that it should show that it was interrupted in its exercise of the right, or that by competition it was forced to reduce the price of its articles. If it appears that it made any use of the privileges which it acquired from Skidmore and received any benefit from those privileges in the manufacture of these articles during 1893 and 1894, there clearly was not an entire failure of consideration, and the defendant is bound to pay royalties. If for any reason growing out of the contract the amount of royalties which it should pay is to be diminished or it suffered any damages because of a breach on Skidmore's

part of a portion of his contract, yet, as it confessedly took the benefit of the contract to a certain extent by the use of the Fitch patent and of the protection which that patent gave it, it had not repudiated the contract and it is bound to pay royalties ( *Warwick* v. *Stockton*, 37 Atl. Rep. 458), and any remedy which it seeks by reason of a breach of the contract on the part of Skidmore must be obtained either by an action to that effect or by a counterclaim in these actions.

The result of our examination of the cases is that the judgment of the learned referee was erroneous and must be reversed and a new trial ordered before another referee, with costs to the appellant to abide the event of the action.

Van Brunt, P. J., Barrett, Patterson and McLaughlin, JJ., concurred.

Judgment reversed, new trial ordered before another referee, with costs to appellant to abide event.

---

Mortimer Stiefel, as Receiver of the Property of Benjamin Blumenthal, Otto Rothschild and Julius Rothschild, Respondent, *v.* Samuel N. Berlin and Bernhard Trosky, Composing the Firm of Berlin & Trosky, Appellants.

*Fraudulent conveyance by a special partnership — creditor's suit — the appointment of a receiver appointed in supplementary proceedings cannot be attacked collaterally — form of a plea of a defect of parties — all creditors need not be made parties — who must have an intent to prefer — the amount recoverable by a receiver, how limited.*

An objection to the maintenance of an action, brought by a receiver appointed in proceedings supplementary to execution, to set aside a fraudulent conveyance of property made by a special partnership, to the effect that the judgment creditor instituting such proceedings had not exhausted his remedy at law, a proper execution not having been issued upon his judgment, is not well taken; the determination of the court which appointed the receiver is conclusive until reversed.

In such an action a plea of a defect of parties defendant to be effective must set forth the names of those who should be joined as parties defendant.

It is not necessary to make the other creditors of the judgment debtors parties to such an action. Each creditor has the right to assert against the assets of